ANN C. SMITH, USE OF CALEB CUSHING, PLAINTIFF IN ERROR, *v.* THE CORPORATION OF WASHINGTON.

20h 135
L-ed 858
99   641
125  164
42f 283

The power granted by Congress to the corporation of the city of Washington, "to open and keep in repair streets, avenues, lanes, alleys, &c., agreeably to the plan of the city," includes the power to alter the grade or change the level of the land on which the streets by the plan of the city are laid out,

If, in the exercise of this power, an individual proprietor suffers inconvenience or is put to expense, the corporation are not liable in damages.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.

It was an action on the case brought in the Circuit Court by Ann C. Smith, against the corporation of Washington, to recover damages alleged to have been suffered by the plaintiff by reason of the alteration of the grade of K street, in the city of Washington, upon which street the plaintiff's dwelling-house and messuage were situated.

Upon the trial in the court below, after much evidence had been given, the defendants' counsel asked the court to give the following instruction, which was given by the court, and plaintiff's counsel excepted.

If, from the whole evidence aforesaid, the jury shall find that the defendants, *bona fide*, and to promote the public convenience, and to complete and extend the grading of the streets of said city, caused the north side of K street to be cut down, graded, and completed, and thereby caused the damage in said declaration complained of; and that, in the execution of said work, the said corporation made their said excavation in the street, and at a distance of six or seven feet from the front line of the plaintiff's said premises, then the damages so as aforesaid alleged by the plaintiff, if the jury shall believe the same was occasioned by the acts aforesaid of the defendants, and not otherwise, is *damnum absque injuria*, and the plaintiff is not entitled to recover in this action, which instruction the court gave as prayed; whereupon, the plaintiff, by her counsel, excepts to said ruling of the court, and prays the court to sign and seal this, his bill of exceptions, and to cause the same to be enrolled, which is done, this 22d day of May, 1856.

And on the trial of said cause, and before the same was submitted to the jury, the counsel for the said plaintiff requested the said court to give the jury the following instructions, to wit:

1. That if they find, from evidence, that the grade of K street north, in front of said plaintiff's premises mentioned in said declaration, was established and made, and said street gravelled, at or about the year 1832, and the said sidewalk graded and flagged at or about the same time, by the direction and authority of said corporation at the time of opening said street, and in pursuance of the acts of October 23, 1830, August 11, 1831, and 18th of May, 1832—that then the said corporation had no power or authority to regrade said street in a manner to occasion expense to the plaintiff, or injure the use or value of her property, without making compensation therefor, and that the defendants are liable for the damages which the said regrading occasioned plaintiff. [Refused.]

2. That if they believe that the plaintiff or her grantors was induced to build said house in consequence of the said act of October 23, 1830, and the grading of said street in front thereof under it, that then in that case the changing of said grade to her injury, without making compensation, was an act of bad faith towards her, for which the defendants are liable. [Refused.]

That if they find that the said street in front of plaintiff's house was graded under and in pursuance of the act of March 3, 1851, by said defendants, that then the regrading under the act of September 12, 1851, was unauthorized, if the plaintiff sustained injury thereby, for which no compensation was made; and that then, and in that case, the defendants are liable to her for the injury which she sustained thereby. [Refused.]

That if they find that the said defendants caused the pavement in front of said plaintiff's house to be taken up, and said sidewalk to be regraded and the pavement relaid, that then the taking up the same, and regrading and relaying the same, under the acts of August 21, 1851, and 12th of September, 1851, without making compensation for the damages the said plaintiff might sustain thereby, was unauthorized and unlawful, and that said defendants are liable to the plaintiff for the damages sustained thereby. [Refused.]

That under the act of Congress authorizing said defendants to open streets, when they have once graded and opened the same, that they have no lawful authority, without the consent of the property holders injured thereby, and without making compensation for the damages sustained, to regrade so as to injure the value or the use of real estate when the said regrading is made; and that if they find said defendants have so regraded, they are liable to said plaintiff for all damages she has sustained by such regrading. [Refused.]

That if the jury find that the said street had been previously graded by the said corporation, that no changes by the action of the elements thereon, or by natural causes resulting from said grade, can authorize such regrading; and that if the said defendants regraded said streets on account of such changes, they are liable to said plaintiff for all damages which she sustained thereby. [Refused.]

That if the jury find that said street was graded and gravelled, in August, 1851, by said corporation, that without a change of circumstances, and the occurrence of a new and further necessity for a change in said grade, that then the regrade under the act of 12th of September, 1851, was unauthorized and unlawful, and the defendants are liable for such damages as the plaintiff may have sustained by said last-mentioned regrading. [Refused.]

That if the jury find that the defects in the street were such as were occasioned solely by a neglect in not preserving it in the condition in which it was left when first graded under the laws of 1830, 1831, and 1832, that then the defendants were not authorized to regrade said street under either of said acts of 1851, and that their doing so was illegal, and renders them liable for all damage growing out of such regrading resulting therefrom. [Refused by a divided court.]

That if the jury find that said street could have been restored to its condition, as established under the grading originally made, without cutting down said street and regrading it, that said defendants were bound so to restore it without regrading, and that such regrading was unauthorized and illegal, and ren-

ders the defendants liable for all damages sustained by the plaintiff resulting therefrom.    [Refused.]

That if the jury believe that said defendants, in regrading said street in 1851, cut down said street lower than was necessary to restore the former grade, and render the said street equally passable, that such excess of cutting down was unauthorized and illegal, and the said defendants are liable to said plaintiff for all injury sustained by such excess of cutting down. [Refused.]

That if the jury find that in said regrading in 1851, the defendants cut down said K street in front of said plaintiff's premises so much as to render it necessary to regrade and cut down Twelfth street, and thereby render that portion of it north of said K street steeper and more difficult of passage than it formerly was; that such fact raises a presumption that said regrading, to the extent it took place, was unnecessary and improper, and unless such presumption is repelled by proof, that the said regrading was unauthorized, and renders the defendants liable to the plaintiff to the extent of the damages which she has sustained thereby.    [Refused.]

That if the jury find that the fall between the north and south sides of K street in front of plaintiff's premises, by the first grading or first regrading, was not greater than that in one or more of the grades in the city of Washington made or suffered by the defendants in opening and grading said streets, that such fact will raise the presumption that said regrading was not a work of necessity, and was therefore illegal and unauthorized, and renders them liable to all such damages as the plaintiff sustained by such regrading.    [Refused.]

That if the jury find that the north side of said K street in front of plaintiff's house was cut down so low as to turn the water from Thirteenth street from its natural course from north to south, from the high grounds at the north of said K street to the low grounds on I street, at the south, and make it run east to Twelfth street, that such fact is presumptive evidence that said street was cut down more on said north side than was necessary or proper, and that, unless disproved, it is conclusive against the defendants that they cut down there more than was necessary, and that they are liable to the plaintiff for all damage she has sustained thereby.    [Refused.]

That if the jury believe that said K street, or any part thereof, where it crosses Twelfth street, was left higher than said K street, and impassable for teams, or materially obstructed from the regrading in 1851 to the fall of 1854, or to other time, that such fact is presumptive evidence that said regrading was not necessary for the purposes, passing, and travel, on said K

street, but that it was lowered below said Twelfth street at that point for some other purpose; and that, unless disproved, it renders said defendants liable to said plaintiff for all damage she may have sustained by so regrading. [Refused.]

That if the jury find that the lowering the north side of K street in front of said plaintiff's house, and the making a gutter there from Twelfth to Thirteenth street would have obviated the objection of the flow of the water across the street, and gullying the same, without regrading to the extent which said street was regraded, that then said defendants are liable to said plaintiff for all damages sustained by lowering the north side of said street more than was necessary to protect against said flow and injury. [Refused.]

That the statute of Congress authorizing said corporation to open and grade streets in said city, is not a continuing power, but, when once opened and graded, that such corporation is not authorized to regrade the same in a manner whereby private property is injured; and that if they do so, they are liable to those injured for all damages sustained thereby. [Refused.]

The court having refused to give said instructions, the plaintiff's counsel excepted.

The defendants' counsel thereupon asked the said court to give the following instructions:

And thereupon the said plaintiff's counsel, insisting before the jury that the said change of grade was not made by defendants *bona fide*, the defendants now pray the court further to instruct the jury that the defendants cannot be made responsible in damages in this action, unless from the evidence the jury shall find that the said change was made wantonly, wilfully, and maliciously; which instruction the court gave as prayed.

Whereupon the plaintiff, by her counsel, excepted, and prays the court to sign and seal this her bill of exceptions, this 23d day of May, 1856.

And the said court thereupon gave said instructions, and the counsel for the plaintiff excepted.

And thereupon the said jury, under the said ruling of the court, found a verdict for the defendants.

Upon these various rulings and refusals, the case came up to this court.

It was argued by *Mr. Gillet* and *Mr. Cushing* for the plaintiff in error, and *Mr. Carlisle* for the defendants.

The points made by the counsel for the plaintiff in error were the following, viz:

FIRST.—*The plaintiff had a right to give evidence tending to question the bona fides of the defendants in making the regrades.*

One of the tests of good faith in making the said regrades was to compare their acts in question with other acts upon a like subject. If the defendants acted in good faith, they would deal with the people in Franklin Row as they did with those in other parts of the city. The defendants had offered proof that the first grade of K street, in front of plaintiff's house, was steep. Thereupon, the plaintiff offered to prove that it was not as steep as other grades which the corporation had fixed in other parts of the city. This evidence was objected to by the defendants, and rejected by the court, and the plaintiff excepted.

This evidence clearly tended to show, if it was not conclusive, that the defendants applied a different rule in other parts of the city from that which they enforced upon the plaintiff. The evidence offered raised a presumption against the defendants, and it rested with them to repel it by other evidence, if they could. It prejudiced the plaintiff to reject it altogether, and therefore the exception ought to be sustained.

SECOND.—*That the first establishment of a grade raises a presumption that such grade was the proper one; and to justify a change, the defendants were bound to show a change of circumstances, and the occurrence of a new and further necessity, to justify a regrading.*

After the grading in 1831 or 1832, which was proved to be a proper grade, by the acts of the defendants as well as by witnesses, it was incumbent upon the defendants to show some reason for a regrade, other than their neglect in letting the street get out of repair. They offered none of a material character. They ordered the regrade by the act of August 11th, 1851, without any substantial or plausible reason. It was the exercise of power without any reasonable cause.

The regrading under the act of the 12th of September, 1851, is wholly without a pretence of excuse. They had fixed the grade and gravelled the street; neither the elements nor any other cause had changed it, or proved it unsuitable. There was no change of circumstances, and no occurrence of any new or further necessity for a change of what they had made as good and sufficient. It was a wanton exercise of power, without any assignable good motive. It laid the foundation for the assumption that the defendants did not act in good faith. It raised that presumption, and it rested with them to repel it, which they did not attempt.

THIRD.—*The payment of damages to a portion of those injured residing in Franklin Row, authorized the presumption that the defendants did not act in good faith.*

The defendants, as a corporation, derive their powers under the seventh and eighth sections of the act of 1820. (3 U. S. S., 586, 587.) There is no power conferred upon them to make gratuities; to do so would be a wanton violation of duty. They cannot assume that they thus acted in paying Ratcliffe $425 towards his loss. This was an acknowledgment that they had acted wrongfully in the cutting down, and were liable for the injury. It was an admission that they acted without lawful cause, and had no legal justification, and raised a clear presumption against them, which they did not attempt to repel.

FOURTH.—*The condition in which the defendants left the street for a long time, raised the presumption against the good faith of their acts.*

Mr. Ratcliffe testified, that "after the defendants cut down the street, we were left in the mud a year or so." The fact of cutting down the street, and leaving it in the condition described, raises a presumption that it was not done to improve the street and make it more passable. It was incumbent upon the defendants to repel this presumption by proof.

FIFTH.—*The court erred in instructing the jury that the plaintiff could not recover without proving that the change in the street was made "wantonly, wilfully, and maliciously."*

In the first instruction prayed by the defendants, the court told the jury, as a matter of law, that if the defendants acted in good faith in the regrading, the plaintiff could not recover. The plaintiff had given evidence tending to show, unexplained, a want of good faith, and especially the order for the second regrading, within about a month after the first regrading, and her counsel commenced to sum up the facts before the jury, to show that the defendants did not act *bona fide*. Thereupon the defendants' counsel interrupted, and prayed a further instruction, as follows: 

"And thereupon, the plaintiff's counsel insisting before the jury that the said grade was not made by the said defendants *bona fide*, the defendants now pray the court further to instruct the jury, that the defendants cannot be responsible in damages in this action, unless from the evidence the jury shall find that the said change was made wantonly, wilfully, and maliciously; which instruction the said court gave as prayed."

To this there was an exception. The jury of course found, under this instruction, for the defendants.

*a.* Here was a change of ground by defendants during the trial, and one assumed under which the plaintiff could not be expected to prevail. It presented, in effect, a new issue, not raised by the plea of the "general issue."

*b.* It avoided the question of the power of the defendants to regrade, as they had done, as well as that of *bona fides*, and threw upon the plaintiff the burden of proving matters essentially different. These matters relate not to the right to recover, but simply to the extent of the recovery. The decision, in substance, was, that the question of power was not to be looked at, but that the plaintiff must make proof that the act was done "wantonly, wilfully, and maliciously." Under this decision, if the defendants had no power whatever, but had been in fact forbidden by law to do the act complained of, they might not have acted wantonly, wilfully, or maliciously. They might have mistaken the law, or never have seen or heard of it, or acted upon the supposition that they might do whatever they chose; and in either of these cases they would have escaped all responsibility, thus making the plaintiff sustain all the loss, because of their blunders or want of knowledge. Such a rule would work mischief without end. It would be a justification of nearly or quite all the acts of public functionaries, if not of private individuals, of which so much complaint has been made. It would justify courts and officers acting without jurisdiction, if they did not act maliciously. It would, in effect, make the right to recover, in all cases of tort, depend upon the motive which led to its commission, and throw upon the plaintiff the burden of proving that such motive had its origin in malice. A more mischievous rule of action was never maintained and urged before a judicial tribunal.

*c.* Under the instruction, the issue framed by the pleadings was changed. The declaration charged that the defendants had injured her property without authority of law, and the plea denied the allegation. The parties went to trial upon that issue. The court, on the trial, made a different one, and directed the jury that they must find three other charges against the defendants before the plaintiff could recover:

1st. That the defendants had acted wantonly—that is, wholly without regard to restraints or consequences.

2d. That they acted wilfully—that is, obstinately and stubbornly wrong, not yielding to reason; but by design, and with the purpose of doing injury.

3d. That they acted maliciously—that is, with extreme enmity of heart—with malevolence, and with a disposition to injure the plaintiff without cause—with unprovoked malignity or spite. A malicious injury has been defined to be: "An injury committed out of spite or ill-will against another; an injury committed wantonly, wilfully, and without cause." (2 Burrell L. Dic., 698; 1 Chit. Gen. Pr., 136.) Wantonness is defined by Bouvier (2 v. L. Dic., 640) as "A licentious act by

one man towards the person of another, without regard to his rights."

In changing the issue by the charge of the court, the plaintiff sustained an injury; and the judgment ought to be set aside, and a new trial ordered.

SIXTH.—*The defendants had no lawful authority to cut down the street in front of the plaintiff's house, so as to injure her property, without her consent, without making her compensation.*

It is a fundamental rule of law, that artificial bodies, like corporations, can exercise no power except such as is expressly conferred upon them. (Head *v.* Providence Ins. Co., 2 Cr., 121; Mechanics' Bank of Alexandria *v.* Bank of Columbia, 5 Wheat., 326.)

The only power conferred upon the corporation of Washington on this subject is found in the 7th section of the act of May 15th, 1820, (3 U. S. L., 5687,) and is in these words:

"The said corporation shall have full power and authority to * * * erect and repair bridges; to open and keep in repair streets, avenues, lanes, alleys, drains, and sewers, agreeably to the plan of the city, to supply the city with water," &c.

This provision recognises the known historical fact, that at an early day there was prepared and adopted a plan of the city of Washington, wherein the streets, alleys, lanes, &c., were drawn, and the grade of the streets and avenues above tide water accurately laid down. The elevations of the original grades are shown in the diagram in this case, admitted in the stipulation, and is proved by Cluskey's testimony.

The grades having been previously established, the power conferred in relation to streets and avenues was "to open and keep in repair," and not to grade. The intention of Congress was to authorize the city government to carry into effect the plan of the engineers who laid out the city, and of General Washington, who approved of it. It was not the intention to authorize that elaborate work to be broken up and defeated, in conformity to the caprices which might at any time spring into existence in the city government. Hence the limitation of the power conferred. It neither authorizes the opening a street, nor fixing its grade, but permits opening "agreeably to the plan of the city," which contained the grade of every street, avenue, &c. The city cannot lay out a new street, nor fix the grade of an old one. Its power does not extend to either.

But the charter does authorize the city "to cause new alleys to be opened through the squares, and to extend those already laid out, upon the application of the owners of more than one-half of the property in such squares." (Sec. 8, p. 587.)

But this can only be done by paying those injured the losses they sustain, which is to be collected of those whose property shall be benefited, as equity and justice require. This provision in relation to lanes shows that Congress did not intend to arm the city with the power of injuring the property of individuals, without requiring it to make just compensation.

This law is entirely different from the Georgetown act, construed in Gosler *v.* The Corporation of Georgetown, 6 Wheat., 593. The Legislature conferred upon the corporation of Georgetown "full power and authority to make such by-laws and ordinances, for the graduation and levelling of the streets, lanes, and alleys, within the jurisdiction of the same town, as they may judge necessary for the benefit thereof."

Under this provision, a by-law was passed to grade the streets, in which it was declared that forever thereafter the grade thus established should be regarded in making improvements in the streets. Subsequently, the corporation passed a new law, changing the grade. The plaintiff claimed to be injured by the change, and brought suit upon the ground that the corporation had, by the first law, contracted not to disturb the first grade. The court held that it was not a compact, and that the power to make by-laws and ordinances was a continuing power. Marshall, C. J., said:

"The power is not 'to graduate and level the streets,' or 'to make a by-law for the graduation and levelling of the streets;' but 'to make such by-laws and ordinances for the graduation and levelling of the streets,' &c., within the jurisdiction of the same town, as they may judge necessary for the benefit thereof."

He placed the decision upon the ground, that the corporation was clothed with power to act, when they judged it to be necessary for the benefit of the town.

The power in that case was necessarily a continuing power, to be exercised when the corporation thought necessary. There was no limitation as in this case. It is clear that the Chief Justice was of opinion, that if the power had been to "grade and level," or to make a by-law for doing so, it would not have been a continuing power.

In the present case, there being no express power to grade streets, it is claimed that the authority to open streets not only confers that power, but that it continues, and may be exercised without limit, except upon proof of malice. But the power to open is not a continuing power, because when once opened a street cannot be opened again. The power to repair does not include that of establishing a new grade. That term means simply to restore what has been injured to its original condi-

tion. Bouvier (2 v. L. Dic., 447) says, that "repairs" means "that work which is done to an estate to keep it in good order."

It is clear, that when a street is once opened it cannot be regraded under the power to open, and that under the authority to repair nothing can be done but to restore it to its original condition.

But if the power to open authorized the grading, when it was once exercised the power would be exhausted, and could not be exercised a second time.

The counsel for the plaintiff in error referred also to the following authorities:

1. On the power of the President to fix the grades of the streets. (1 vol. Opin. of Atty's Gen., 368, 416; Burch's Dig. of Atty's Gen., 331; Act of Congress of 1851, 9 Stat. at L., 614; Act of 1852, 10 Stat. at L., 92.)

2. Cases on the right of action on the ground of responsibility. (Rolles Rep., 43; 1 Cramp. and Jar., 20; 9 Barn. and Cres., 705; 16 East, 215; 2 Barn. and Cres., 703; 5 Barn. and Ad., 837; 6 Taun., 23; 3 Burgh. N. C., 468; Selw. N. P., 241; 3 Barn. and Ad., 875.)

*Mr. Carlisle*, for defendant in error, maintained that the action of the court below, in granting or refusing instructions, depended on the following propositions:

I. The corporation of Washington had power, under its charter, to regrade this street. Its power in this respect is a continuing power, to be exercised, *toties quoties*, as the public convenience may require. (Gorzler *v.* The Corporation of Georgetown, 6 Wheat., 593; Act of Assembly of Md., 1797, ch. 56, sec. 6; Van Ness and ux. *v.* The U. S. and Corporation of Washington, 4 Pet., 280; Char. of 1820, 3 Stat. at L., 587.)

II. The corporation had no power, even by an express ordinance, or contract in any form, to bind itself not to change or alter the grade of the street, even if such grade should be, by the same ordinance or contract, or in any other manner, established. And it follows, of course, that there can be no implied contract, such as is imputed to the corporation, in the premises. The plaintiff could not have acquired any right, by convention, grant, prescription, or contract, express or implied, to have the old grade of the street maintained.

This follows from the preceding point, and is sustained by the same reason and authorities.

III. The case made by the plaintiff in error is one of mere *damnum absque injuria.* It shows no invasion of any right, but simply a damage resulting from the *bona fide* and careful exercise of a lawful authority for the public good. The supposed

right of the plaintiff, of the invasion of which she complains, is a right *ex jure naturæ* to build a house on the top of a hill in the midst of a city, and to require the city to conform perpetually to her convenience, at the expense of the convenience of everybody else; a right to keep a nuisance; to insist on an impracticable grade of a public street; to destroy the value of all the surrounding lots of ground, in order that she may have more convenient access to the house so built. But if, in any case, such right, *ex jure naturæ*, could be maintained, certainly it does not exist in the city of Washington, where all titles to city lots are held from a common source, and subject to common conditions and liabilities; the original proprietors having conveyed .their lands to trustees "to be laid out for a federal city, with such streets, &c., as the President of the United States for the time being shall approve." (Burch's Digest, 331; 4 Peters, 283.) The plaintiff was simply the owner of a city lot, as such.

That no action lies in such case, results from the fact that no injury, no violation of her right, has occurred. (4 D. and E., 794, Governor, &c., *v.* Meredith; 8 Cow., 146, Lansing *v.* Smith; 1 Denio, 595, Wilson *v.* The Mayor, &c.; 1 Am. Law Reg., 550, Woodfolk *v.* Nashville Co., by the Sup. Court of Tenn.; 12 Mo. Rep., 418, St. Louis *v.* Gurno; 9 Watts, 382, Green *v.* Borough of Reading; 18 Penn., 187, O'Connor *v.* Pittsburg; 29 Miss., 37, Withers *v.* Commissioners, &c.

Mr. Justice GRIER delivered the opinion of the court.

The declaration in this case alleges, in substance, that the plaintiff is owner of a lot in the city of Washington, fronting on K street; that this street was opened in front of her lot in the year 1831, and became a travelled street; that a wall had been erected in front of the lot, to protect it; that shade trees had been planted in front it; that a sidewalk had been laid; "that defendants unlawfully, wrongfully, and injuriously," cut down the shade trees, took down the wall, removed the pavement, and dug down the street in front of the premises, thereby obstructing and injuring the ingress and egress to plaintiff's lot and the buildings thereon—injuring their value, depriving her of the shade and ornament of the trees, and compelling her to pay large sums of money to enable her to use and occupy her house.

It must be observed that the gravamen of this case is not a trespass on the property of the plaintiff, or the taking down a wall or removing shade trees thereon; nor the erection of a nuisance on the public highway; nor a wilful, malicious, or oppressive abuse of authority, in order to injure the plaintiff.

But the declaration charges that these acts of defendants, in reducing the level of the street, removing trees, pavement, &c., were done "unlawfully, wrongfully, and injuriously."

On the pleadings and evidence in the case, the only questions of law that did or could arise on it, were—

1st. Whether the corporation, defendant, had power to change the grade of the street, or acted "unlawfully and wrongfully" in so doing; and,

2d. If the act was lawful, were the defendants bound to compensate the plaintiff for the injurious consequences to her property?

1. First, then, as to the authority of the corporation.

It is unnecessary, in the consideration of this point, to recur to the early history of the foundation of the city of Washington; suffice to say, the land was originally conveyed to trustees, "to be laid out as a federal city, with such streets, &c., as the President shall approve." It has been so laid out, and the streets dedicated to the public. As in all other cities and towns, the legal title to the public streets is vested in the sovereign, as trustee for the public; and consequently in this District they can be regulated only by Congress, directly, or by such individuals or corporations as are authorized by Congress.

The act to incorporate the city of Washington, passed May 15th, 1820, among other specific powers and duties enumerated in the seventh section, has the following: " *To open and keep in repair* streets, avenues, lanes, alleys, &c., &c., agreeably to the plan of the city."

It has been contended that this power, "to open and keep in repair," does not include the power to alter the grade or change the level of the land on which the streets, by the plan of the city, are laid out.

But we think such a construction of this clause of the charter is entirely too narrow, and cannot be supported as consonant either with the letter or spirit of the statute. It is the evident intention and policy of this statute to commit to this corporation, as a municipal organ of government, whose members are chosen by the citizens, the care, supervision, and general regulation of the streets, as in other cities and boroughs.

Where sums of money have been specially voted by Congress for the improvement of the city, it is usual to order it to be expended under the supervision of the President. But no inference can be drawn from such legislation, that Congress intended to retain the whole police and regulation of the streets to itself, so as to require a special act to alter the grade of a street, or that the President, in addition to his other duties, has imposed on him that of street commissioner of Washing-

ton. The city corporation has the trust confided to them, and the duty imposed upon them, not only of opening the streets of Washington, but of "keeping them in repair."

Streets cannot be opened and kept in repair, or made safe or convenient for public use, without being made level, or as nearly so as the nature of the ground will permit. Hills must be cut down and hollows filled up, or, in other words, the road must be "*graded*" or "reduced to a certain degree of ascent or descent;" which is the proper definition of the verb "to grade." If the duty imposed on the corporation requires this to be done, the power must be coextensive with the duty. If charged with neglect of their duty, as public officers bound to keep the streets in repair, it would not be a sufficient excuse to allege that the fences and obstructions are removed, and therefore the street is "opened," or that it has been kept in as good "repair" as it was found.

A Court of Quarter Sessions would probably not receive a defence founded on such astute philological criticism of the terms of the statute. Nor could the allegation be admitted, that having once fixed a grade, which is now found improper and insufficient, the corporation has exhausted its power, and has no authority to change the level or grade, in order to keep the street in repair. As the duty is a continuing one, so is the power necessary to perform it.

2. Having performed this trust, confided to them by the law, according to the best of their judgment and discretion, without exceeding the jurisdiction and authority vested in them as agents of the public, and on land dedicated to public use for the purposes of a highway, they have not acted "unlawfully or wrongfully," as charged in the declaration. They have not trespassed on the plaintiff's property, nor erected a nuisance injurious to it, and are, consequently, not liable to damages where they have committed no wrong, but have fulfilled a duty imposed on them by law as agents of the public. The plaintiff may have suffered inconvenience and been put to expense in consequence of such action; yet, as the act of defendants is not "unlawful or wrongful," they are not bound to make any recompense. It is what the law styles "*damnum absque injuria.*" Private interests must yield to public accommodation; one cannot build his house on the top of a hill in the midst of a city, and require the grade of the street to conform to his convenience, at the expense of that of the public.

The law on this subject is well settled, both in England and this country. The cases are too numerous for quotation; a reference to one or two more immediately applicable to the questions arising in this case will be sufficient.

In Callender *v.* Marsh, (1 Pick., 417,) the defendant, as surveyor of the highways, was charged with digging down a street in Boston, so as to lay bare the foundations of plaintiff's house, and endanger its falling. The authority under which he acted was given by a statute which required "that all highways, townways, &c., should be *kept in repair and amended* from time to time, that the same may be safe and convenient for travellers." "This very general and exclusive authority," say the court, "would seem to include everything which may be needed towards making the ways perfect and complete, either by levelling them where they are uneven and difficult of ascent, or raising them where they should be sunken and miry." It was held, also, that the law does not give a right to compensation for an indirect or consequential damage or expense, resulting from a right use of property belonging to the public.

In Green *v.* The Borough of Reading, (9 Watts, 282.)

The defendants, by virtue of their authority to "*improve and repair*," graded the street in front of plaintiff's house five feet higher than it had been before, and it was held that the corporation was not liable to an action for any consequential injury to plaintiff's property, by reason of such improvement or change of grade in the public street.

In the case of O'Connor *v.* Pittsburg, (18 Penn. Rep., 187,) a church had been built according to the direction of the city regulator, and by a grade established in 1829. Afterwards, in pursuance of an ordinance, the grade of the street was reduced seventeen feet; the church had to be taken down and rebuilt on a lower foundation, at a damage of $4,000. The authority given to the city was "*to improve, repair, and keep in order the streets,*" &c.

The court say, "We had this case reargued, in order to discover, if possible, some way to relieve the plaintiff consistently with law, but grieve to say we can find none. The law is settled, not only in Pennsylvania, but by every decision in the sister States, except one."

We are of opinion, therefore, that the instructions given by the court below on these points were correct, and affirm their judgment.