216

Horace J. MEYERS et al., Plaintiffs,

v.

The DISTRICT OF COLUMBIA and John McShain, Inc., Defendants.

Civ. A. No. 3653–51.

United States District Court,
District of Columbia.

March 10, 1955.

Vernon E. West, Corp. Counsel, Milton D. Korman, John H. Baumgartner, Jr., Asst. Corp. Counsel, Washington, D. C., for the defendant District of Columbia, for the motion.

Nicholas J. Chase, Washington, D. C., for defendant John McShain, Inc., for the motion.

Joseph A. Kaufmann, Washington, D. C., for plaintiffs, opposed.

HOLTZOFF, District Judge.

The District of Columbia, between 1948 and 1950, constructed a vehicular underpass under Connecticut Avenue, one of the main thoroughfares in the city of Washington, at a point known as Dupont Circle, where Connecticut Avenue intersects a number of other streets. The purpose of the tunnel was to expedite the movement of vehicular traffic and to protect pedestrians having occasion to cross one of the streets at that intersection. The neighborhood where the improvement is situated is in part residential and in part commercial. Many stores are located around the Circle and in its vicinity.

This action is brought against the District of Columbia and against the contractor who constructed the underpass for the District by a number of merchants owning or operating business establishments near Dupont Circle, to recover damages for loss of business caused by interference with access to the shops during the progress of the work. The matter comes before the court at this time on motions of the defendants for summary judgment.

■ The District of Columbia acted within its legal power in undertaking the project. Obviously, improvements of this nature are necessary from time to time and Governmental authorities would be derelict in their duties if they did not recognize the need for them when it arises and act upon it. Consequential damages to adjoining property owners in the way of diminution of business while construction is in progress, does not constitute a taking of property for which compensation must be made under the Fifth Amendment of the Constitution. Such losses are *damnum absque injuria* and unfortunately must be borne by the individual as part of the price that he pays for being a member of organized society and living in an urban community. A project of the type involved in this case is in a sense a change of grade in the street. It is well settled in this jurisdiction that adjoining property owners may not recover compensation for damages for change of grade of the street upon which their land abuts.[1] On the other hand, if as a result of negligence, the time for the completion of the project is unduly and unreasonably prolonged, thereby continuing interference with business for an unnecessary length of time, a cause of action for damages arises against the governmental unit, and possibly against the contractor. Plaintiffs' claim for relief is predicated on the last mentioned theory.

These principles are well recognized by the authorities. George Washington Inn v. Consolidated Engineering Co., 64 App.D.C. 138, 75 F.2d 657, involved the erection of an annex to the office building of the House of Representatives in Washington, D. C. During the progress of the work, streets in the vicinity of the plaintiff's hotel were temporarily closed, thereby interfering with its business. An action for damages was brought against the contractor. A demurrer to the declaration was overruled merely because it contained an allegation that the obstruction was permitted "beyond what was reasonably necessary". The court recognized that the District of Columbia had the right to obstruct access to private property temporarily in carrying on a public improvement and was under no obligation to pay consequential damages, but held merely that if this was done unnecessarily and for an unreasonable length of time, an action for damages might lie. The ruling of the court was a narrow one, namely, that the declaration was so phrased as to be good as against a demurrer.

Ralph v. Hazen, 68 App.D.C. 55, 93 F. 2d 68, concerned the construction of a viaduct in the city of Washington, for the purpose of eliminating a dangerous railroad grade crossing. The court pointed out that no damages could be recovered because of a change in street grading. By the same token the construction of an underpass is nothing but a change in street grading. It was further held that if means of ingress and egress were not cut off or lessened, but only rendered less convenient, such consequence is *damnum absque injuria*. It is a consequential injury resulting from the exercise of the police power for which no right to damages accrues.

Transportation Co. v. Chicago, 99 U.S. 635, 25 L.Ed. 336, involved the construction by that city of a tunnel under the

---

1. Smith v. Corporation of Washington, 20 How. 135, 61 U.S. 135, 15 L.Ed. 858; Osborne v. District of Columbia, 63 App. D.C. 277, 72 F.2d 70; Ralph v. Hazen, 68 App.D.C. 55, 93 F.2d 68; Bealle v. District of Columbia, D.C., 80 F.Supp. 75.

Chicago River. The plaintiff claimed that it sustained damages by reason of the erection of a coffer-dam in front of its dock, which remained standing for almost a year while the work on the project was in progress. It was asserted that the dam blocked access to the plaintiff's dock, and that the plaintiff was compelled to rent other docks for the time being. At a trial on the merits, the defendant offered testimony tending to prove that the work was done well and carefully, without unnecessary delay, and that the coffer-dam was required for the construction of the tunnel. A judgment for the defendant was affirmed by the Supreme Court. Mr. Justice Strong summarized the pertinent principles as follows, 99 U.S. at pages 641, 642:

> "It is undeniable that in making the improvement of which the plaintiffs complain the city was the agent of the State, and performing a public duty imposed upon it by the legislature; and that persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted alike in England and in this country.
>
> * * * * * *
>
> "* * * acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action."

Lund v. St. Paul, Minneapolis & Manitoba R. Co., 31 Wash. 286, 71 P. 1032, 61 L.R.A. 506, dealt with the construction of a railroad bridge and a change in the grade of a street in the city of Spokane. In the prosecution of the work, it became necessary to close a street, thereby partially interfering with access to a nearby hotel conducted by the plaintiff and adversely affecting his business. It was claimed by him that by the exercise of reasonable and proper diligence the bridge could have been built within three months instead of the year's time which the project actually consumed. The court held that there was no evidence tending to show any unreasonable delay on the part of the defendant, but that, on the contrary, the work was forwarded with dispatch. It appeared that the time of construction had been prolonged by the delay on the part of a manufacturer in delivering the structural steel required for use in the bridge. The court concluded that there was no liability for damages to the property owner.

An illuminating case is Farrell v. Rose, 253 N.Y. 73, 170 N.E. 498, 68 A.L.R. 1505, which involved the building of a retaining wall for the purpose of constructing a highway in the city of New York, known as Harlem River Terrace. The plaintiff operated a number of garages adjoining the highway. While the work was in progress, there was interference with access to the plaintiff's garages. The work consumed 147 days more than the time provided by the contract between the city and the contractor. The delay was caused by storms, a cave-in of a sewer, and landslides. The court held that the plaintiff had no cause of action for damages caused by the delay. It expressly ruled that the mere fact that the work took more time than prescribed by the contract did not constitute sufficient basis for recovery, but that it was necessary to establish affirmatively that the delay was unreasonable and unnecessary. Judge Crane, an eminent jurist, made the following pointed observations on the questions that were presented in that case, and which are cognate to those confronting the court in the case at bar, 253 N.Y. at pages 76 and 80, 170 N.E. at page 499:

"As an adjoining property owner, the plaintiff had the right to use the street and highway in front of his premises, subject at all times to the reasonable control and regulation of the municipal authorities, and to work in the street necessary for its repair and maintenance, or for the construction of other public utilities. This is common knowledge to those of us who live in a metropolis like New York City.[2] The highway is continually being dug up for subways, sewers, gas mains, repairs and the like. The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. The law, however, does afford him a relief, if the city or a contractor interferes with the highway without authority; or, if acting legally, prolongs the work unnecessarily or unreasonably. The obstruction of streets and highways, or the work carried on in them of a public nature, must be reasonable and necessary for the public improvement which is being made.

\*   \*   \*   \*   \*   \*

"*The fact that there was a delay or an excess time of performance gave him no rights; the burden rested upon him to prove,* by the testimony of men familiar with this class of work and with the situation, *that the delay was unreasonable and unnecessary.* This is the basis of his action, not merely the fact of delay." (Emphasis supplied.)

In support of the defendants' motions for summary judgment, there is presented a deposition which the defendant District of Columbia took of the expert witness retained by plaintiffs. He is an engineer experienced in such matters. He testified that there was nothing improper from an engineering standpoint in the specifications prepared by the District of Columbia authorities for the construction of the underpass (p. 10), or in the scheduling of the project (p. 34). He expressed the opinion that the vehicular controls, street controls, and traffic controls were proper (p. 36). He suggested that the work could have been completed in a shorter length of time, if more machinery and more men had been used and the men had been required to work longer hours, say· in two shifts, but that this course would have resulted in much greater expense (p. 11; p. 5, 2d deposition). He also remarked that some of the operations could have been carried on together (pp. 7 and 26, 2d Upham deposition). On the other hand, he expressed the view that the balancing of considerations such as excessive costs, or disturbance of the residents living in the neighborhood by reason of working overtime and employing two shifts, was within the judgment of the authorities making the decision (Id. p. 6). His testimony was summed up by his statement that the work was scheduled in accordance with sound engineering principles, that, "There could have been many others, but that was a sound schedule." (2d Upham deposition, p. 38 (a)). His conclusion, in effect, was that the operation was scheduled and conducted in accordance with sound engineering principles; that it was not done negligently; that it indeed could have been done differently at greater expense and with greater disturbance to the peace and quiet of the residents, and in that event the time of performance might have been shortened, but whether such a course should have been chosen was within the sound discretion of the authorities. Finally, he stated that no two en-

2.  This remark is equally applicable to the Nation's capital.

gineers would do the work in the same way.

The plaintiffs have not submitted any countervailing papers on the motions of the defendants for summary judgment. In other words, there is no evidence of negligence. If this were the state of the evidence at the close of the plaintiffs' case at the trial, there would be no issue of fact to submit to the jury, and a verdict would have to be directed in favor of the defendants. In view of these considerations it is proper to grant the motions for summary judgment in their favor.

■■■ The Rule relating to summary judgments Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides that, "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Obviously the Rule does not contemplate that it is sufficient to warrant a denial of the motion if the pleadings create a formal issue as to a material fact. Were the Rule to be so construed, it would be rendered nugatory. The purpose of the summary judgment rule is to explore by material *dehors* the pleadings the question whether actually a genuine issue exists as to any material fact. If the moving party makes a prima facie showing on the basis of the material adduced in support of the motion that no genuine issue is presented as to any material fact under applicable principles of substantive law, then the burden is on his adversary to establish by countervailing material that such an issue exists. In this instance, the plaintiffs introduced no such material. One of the corollaries of these principles is that if it appears from the documents presented in connection with the motion that the state of the evidence is such that the moving party would be entitled to a directed verdict at the trial, no material issue of fact exists and disposition of the case by summary judgment is appropriate.

The latest expression of the Court of Appeals for the District of Columbia Circuit on this point is found in Dewey v. Clark, 86 U.S.App.D.C. 137, 143, 180 F. 2d 766, 772, in which the question is discussed elaborately and the following principle is laid down:

"To support summary judgment the situation must justify a directed verdict insofar as the facts are concerned."

The latest reported decision on this point is an opinion of the Court of Appeals for the Ninth Circuit in Byrnes v. Mutual Life Insurance Co. of New York, 217 F.2d 497, 501, decided about three months ago. In that case it was stated:

"If the testimony presented by the affidavits is such that a directed verdict would have to be granted, the court is justified in granting summary judgment unless affirmative testimony is offered to discredit the testimony."

There are numerous cases to the same effect. Thus, in Dyer v. MacDougall, 2 Cir., 201 F.2d 265, 268, involving an action for slander, the affidavits showed that the only persons who were in a position to testify as to the alleged slander would deny that the slander had been uttered and, therefore, the plaintiff would have no witnesses by whom he could prove his cause of action. Judge Learned Hand pointed out that on such a showing the plaintiff could not escape a directed verdict and held that, therefore, it was proper to grant a summary judgment in favor of the defendant.

In Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715, 718, the plaintiff made out a prima facie case in support of a motion for summary judgment by depositions taken by him. The defendant contended that if it were given time it might perhaps find some

witnesses who would testify to the contrary. The Court of Appeals for the Second Circuit in an opinion by Judge Learned Hand, took the opposite view and affirmed an order granting summary judgment. Judge Hand stated:

"When a party presents evidence on which, taken by itself, it would be entitled to a directed verdict if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence which it can adduce and which will change the result."

Numerous additional authorities may be cited reiterating and applying the foregoing principles.[3]

As has been indicated, on the state of the evidence established by the papers submitted on these motions, the defendants would be entitled to a directed verdict in their favor at the close of the plaintiffs' case. It follows hence that there is no material issue of fact and that, therefore, the defendants are entitled to summary judgment.

Defendants' motions for summary judgment are granted.

**3.** Among many others the following cases may be cited: Culhane v. Jackson Hardware Co., D.C.S.D., 25 F.Supp. 324; Ramsouer v. Midland Valley R. Co., D.C. W.D.Ark., 44 F.Supp. 523, 527, reversed on another ground, 8 Cir., 135 F.2d 101; Orvis v. Brickman, D.C., 95 F.Supp. 605, 607; and Morgan v. Sylvester, D.C., 125 F.Supp. 380, 390.

20 Boston Law Review 233, contains the following illustrations of motions for a summary judgment, using as a basis a supposititious action on a promissory note, the execution of which was denied in the answer:

"Suppose the plaintiff moves for a summary judgment on an affidavit sworn to by himself or by some other person having first-hand knowledge of the facts, in which the story is told circumstantially that in the affiant's presence the defendant signed and handed to the plaintiff the note on which the suit is brought. Suppose the defendant is unable to deny these averments under oath. The plaintiff receives a summary judgment without waiting for the case to come to trial. Assume, however, that the defendant files an answering affidavit denying under oath that he has ever signed the note and stating that if the incident related in the plaintiff's affidavit ever took place, some imposter must have impersonated the defendant. An issue of fact is created. The motion for summary judgment is denied and the case will have to be tried.

"Let us consider a situation that is a little more complex. Suppose it should appear from an affidavit adduced by the plaintiff that the note was signed by a person who was acting as an agent of the defendant, and suppose then the defendant files an affidavit denying the agent's authority to execute the note. That creates a material issue of fact. Motion for summary judgment is denied and the case will have to be tried. Assume, however, that the plaintiff, realizing that the issue of agency is the vital issue in the case, takes the deposition of the alleged agent * * * and suppose he elicits proof showing that as a matter of law the alleged agent had ostensible authority to execute the note. The plaintiff then makes a motion for summary judgment on the basis of his affidavit, and of this deposition. The defendant files an affidavit denying the agent's authority. If on the basis of the record, the court should rule that ostensible authority existed as a matter of law, it would grant the motion for summary judgment. Otherwise it would deny the motion and let the case come to trial."