CHICAGO, EVANSTON AND LAKE SUPERIOR RAILROAD COMPANY

*v.*

THE CATHOLIC BISHOP OF CHICAGO *et al.*

*Filed at Ottawa January 25, 1887.*

1. EMINENT DOMAIN—*of the compensation to be awarded—of the time to which valuation must relate—rights acquired pendente lite.*   The compensation to be paid by the petitioner must be fixed by the valuation of the property taken, at the date of the filing of the petition.   Therefore, rights acquired by tenants or third persons after that date, are acquired *pendente lite,* and are subordinate to the rights of the petitioner; and such tenants can not recover for improvements made upon the premises.

2. SAME—*when the market value must prevail.*   Where an entire strip of land is taken for railroad purposes, so that the owner has no other adjoining property to be damaged, the measure of the compensation to be paid therefor is the market value of the property.

3. SAME—*effect of a particular use of the property, upon the measure of compensation.*   Where the proprietor of land elects to use it for one purpose rather than another, or assumes a restriction as to the character of use he will permit, in nowise binding upon him by the nature of his tenure, this will not prevent his recovering, in a proceeding to condemn the same, its value, from its capacity and adaptability for other uses.

4. So in determining the market value sought to be taken, reference may be had not merely to the uses to which the land is actually applied, but its capacity for other uses, so far as the same may be shown by the evidence.

5. SAME—*where the owner or proprietor enjoys only a restricted use of the property—as affecting the measure of compensation.*   Where, however, the owner of land sought to be condemned is restricted, by statute, or by the provisions of the instrument under which he holds title, or in any other binding way, to a particular use of it, so that he can not lawfully apply it to any other use, the measure of his compensation will be its value to him for the special use to which he is so restricted.

6. SAME—*compensation to a tenant.*   A verdict in a proceeding to condemn land, which gives a tenant in possession of a part of the premises the full value of his improvements thereon, and also allows him to remove the same, is so manifestly unjust as to call for a reversal of the judgment.

7. SAME—*evidence in fixing value.*   On a proceeding to condemn land for public use, on the question of the value of the property, the petitioner offered to prove that an agent of the owner agreed to accept $8000 for the ground, but afterward refused to take it, because the petitioner would not

pay $500 to the tenants on the premises, which the court refused to admit: *Held*, that the exclusion was proper. The question to be decided was, the market value of the land. It was immaterial what opinion upon that subject had previously been expressed by an agent of the owner.

8. Instruction—*contradictory.* Where the plaintiff procures an erroneous instruction to be given, he can not complain of another instruction given for the defendant, which states the law correctly, merely because it is contradictory of the one given at his instance.

Appeal from the County Court of Cook county; the Hon. Richard Prendergast, Judge, presiding.

Mr. E. Walker, for the appellant.

Messrs. Hynes, English & Dunne, for the appellee the Catholic Bishop.

Mr. Robert L. Fatham, and Mr. Robert H. McCurdy, for the appellee William H. Bairstow.

Mr. Justice Magruder delivered the opinion of the Court:

This is a proceeding, instituted in the county court of Cook county by the appellant railroad company, under the Eminent Domain act, for the purpose of condemning a piece of land, owned by the appellee, "the Catholic Bishop of Chicago," a corporation *sole.* The appellees, Bairstow and Moore, claim to be lessees of portions of the premises, and, also, to be the owners of certain improvements thereon. The property, sought to be condemned, is a narrow strip of ground, $585\frac{8}{100}$ feet long, and about 40 or 41 feet wide, situated on the west side of the main road from Chicago to Evanston, and between the road and the tracks of the Northwestern Railroad Company. It adjoins the station of the Northwestern Railroad Company, known as Calvary station, and lies alongside of the railroad platform, connected with the station. On the east side of the main road lies Calvary cemetery, a burying ground, owned by the Catholic bishop of Chicago. The strip in ques-

tion lies opposite the cemetery, and the south end of the strip is almost directly opposite the main entrance to the cemetery.

The jury, by its verdict, awarded to the Catholic bishop of Chicago, for his interest in the land, $9815.50, and the court rendered judgment, declaring his full compensation and damages to be that amount.

The main point, made by counsel for appellant, is that the damages are excessive. The case was not complicated by any consideration of damages to property, not taken. The whole strip of ground was condemned, and the simple question was as to the value of the land taken. As is usual in such cases, there is great conflict in the testimony of the witnesses, those testifying for the railroad, putting it at low figures, and those testifying for the owner, putting it at high figures. Besides considering the evidence of the witnesses, as given in their presence, the jury went upon the premises, and examined them, and exercised their own judgment as to the value. Under these circumstances, although the verdict is fully as large as the testimony warranted, yet we can not say, that it is so excessive as to justify a reversal on that account.

The testimony showed, that the land in controversy had been rented, as a stone and marble yard, ever since 1869, and that it had been occupied for such purpose by Bairstow from 1872 up to the time of the trial of this cause. There was some testimony going to show its adaptability for use as restaurant property. One witness testified, that "it got to be an understood fact, that the bishop would not rent it for any such purpose," as the keeping of a restaurant. It does not appear, however, except from the hearsay evidence of outside parties, that the church authorities ever actually placed any restriction upon its use except for saloon purposes. Upon this subject appellant asked and the court gave an instruction, a part of which is as follows:

"The respondent, the Catholic bishop of Chicago, has offered evidence tending to show the market value of a part

of the property in controversy, for a special use,—such as a sale or rental for restaurant purpose or use ; and in considering such evidence, you should determine, from the evidence, whether the Catholic bishop of Chicago, prior to the commencement of this action, had put such property, or any part thereof, on the market for sale or rental for such use, and whether, prior to such time, there was any application for either the purchase or rental of such property, or any part thereof, for such use, together with all other evidence on that point, if any, as you may find in the case ; and if you believe, from all the evidence, that, at the time of filing the petition herein, the Catholic bishop of Chicago restricted and would not permit such use, and that he withdrew such property from such use, then the court instructs you that you should not award as compensation for the land taken, its value for such special use."

The court also gave for the appellee, the Catholic bishop of Chicago, the following instruction and several others of like import therewith :

"6. The jury are instructed, the true measure of compensation for property to be condemned is the market value of the property, but references may be had, not merely to the uses to which the land is actually applied, but its capacity for other uses, so far as the same may be shown by the evidence, may also be considered."

It is not claimed, that the sixth instruction, given for appellees, lays down any erroneous or incorrect rule. It is in accord with previous decisions of this court. (*Haslam* v. *Galena and Southern Wisconsin Railroad Co.* 64 Ill. 353 ; *Chicago and Evanston Railroad Co.* v. *Jacobs,* 110 id. 414.) But counsel says, that this instruction and the others of like character with it, which were given for appellees, contradict and nullify the above instruction, which was given for appellant. It is urged, that the language of the instructions for appellee is broad enough to justify the jury in considering the capacity

of the land for use for restaurant purposes, while the instruction for appellant expressly told them, that, if the bishop had refused to permit the ground to be used for restaurant purposes, his restriction upon its use for such purpose would prevent them from awarding, as compensation, its value for such special use.

The objection, here urged, assumes, that the instruction, given for appellant, laid down the law correctly. If it did not, then its contradiction by the instructions upon this subject, which were given for appellees and which did lay down the law correctly, would make no difference.

Where the owner of land is restricted by statute, or by the provisions of the instrument, under which he holds his title, or in any other binding way, to a particular use of it, so that he can not lawfully apply it to any other use, the measure of his compensation, where the land is taken by condemnation, will be its value to him for the special use, to which he is so restricted. Thus, in *In re Albany Street in New York City*, 11 Wend. 149, the ground, taken for a street, was a cemetery, and it appeared, that it could not be used for any other purpose by the corporation of Trinity Church than for burying the dead. It was there held, that it was the damage sustained by the church, which the commissioners were to ascertain, and that the true rule of estimating such damage was to appraise the property at its then present value to the owner, considering the extent of his interest and the qualified rights, which might be exercised over it. To the same effect is *Stebbing* v. *Metropolitan Board of Works*, 6 Q. B. 37, where a part of a graveyard was condemned for a street, and where the owner held it subject to a restriction, "which it was not practically possible for him to remove."

The ground, in controversy in this suit, is not a part of Calvary cemetery. It is outside of the cemetery and across the street from it. The record furnishes no proof as to how the Catholic bishop obtained his title, nor upon what terms he

34—119 ILL.

holds it.  Undoubtedly he holds it for the use and benefit of his church, but it in no way appears from the evidence before us, that he is subject to any restrictions as to the mode, in which he may so use it.  The testimony tends to show, that this ground was not taxed.  Inasmuch as it had been rented for years for a marble and stone yard, and was yielding a profit, it was unquestionably subject to taxation.  This, however, was a matter to be settled between the owner and the taxing power, and did not concern the appellant.

The bishop may have declined to rent the property for a restaurant, and may have forbidden its use for that purpose, on the ground that there was an impropriety in allowing a resort of that description to be located opposite the entrance to a sacred place under the special control of a religious body. But this was a limitation of the use, that was altogether self-imposed.  Such a restriction as here existed was fixed by the will and preference of the owner, and was not binding upon him by the nature of his tenure.  Because the proprietor of land elects to use it for one purpose rather than another, we do not think, that its capacity for the use, to which it is not put, is improperly taken into consideration in estimating its value.  In *Haslam* v. *Galena and Southern Wisconsin Railroad Co. supra*, we said, that a witness might be asked "not only the actual uses of the land, but its capabilities, as far as they add to its market value.  If the land has a mine under its surface, the fact may be stated, if the mine adds to its market value, even though such mine has never been worked."  It follows, from what is here said, that the instruction which is complained of as having been contradicted, did not lay down a correct principle of law.

Appellant, upon the trial, offered to prove, that, after the beginning of this suit, it agreed to pay, and a representative of the Catholic bishop agreed to accept, $8000 for the ground in controversy, and that such representative afterwards refused to take the $8000, because the railroad company would

not consent to pay $500 to the tenants upon the property. It was stated, that this offer was made for the purpose of showing what the opinion of an authorized agent of the bishop was as to the value of the ground. The court declined to admit the proposed evidence. Its exclusion was proper.

The question to be decided was the market value of the land. It was immaterial what opinion upon that subject had been previously expressed by an agent of one of the appellees. Moreover, parties to a litigation may negotiate for the settlement of their dispute, and one party can not introduce in evidence, to the disadvantage of the other, propositions, that may have been made with a view of effecting a compromise.

The court instructed the jury, on behalf of the appellee tenants, that, if such tenants had placed buildings on the premises, which could not be removed without damages to them, they were entitled to such damages, and to the reasonable cost of the removal of them to the most convenient place, to which they could be removed. We do not deem it necessary to discuss the question whether this instruction was correct and proper or not, under the facts of this case. It induced the jury to award the appellee, Bairstow, $1520 "for damages to and removal of improvements." We can find no evidence in the record to justify this award.

The only evidence, which can be held to have any bearing upon the subject, is that which tends to show, that Bairstow agreed with the archbishop to remove all his improvements and surrender up his lease upon being paid $700, the archbishop to furnish a team and two men to help him move his stone and material. If this is to be regarded as legitimate proof upon the amount of damages to the improvements and the cost of removing them, then as it was the only proof, the verdict was too large and can not be sustained.

Much testimony was introduced to prove the value of the improvements, and it is very evident, that the jury have awarded to appellee Bairstow the full value of the same,

although the very language of the verdict shows that he was to have the privilege of removing them. To give him all that his improvements were worth, and, at the same time, to allow him to take them away was manifestly unjust.

As to the appellee, Moore, he had no lease, until long after this proceeding was begun, and his office and stock of materials were placed upon the ground after the filing of the petition herein. He was not therefore entitled to any recovery. The compensation to be paid by appellant must be fixed by the valuation of the property at the date of the filing of the petition. The right, vested in it, upon its payment of the compensation, awarded for the land, relates back to the time of filing the petition. Hence, rights acquired by third parties after that date are acquired *pendente lite*, and are subordinate to the rights of the petitioner. *Schreiber* v. *Chicago and Evanston Railroad Co.* 115 Ill. 340.

The judgment of the county court is, therefore, affirmed as to the amount awarded for the land, but as to the other amounts awarded, it is reversed, and the cause is remanded for further proceedings in conformity with this opinion.

*Judgment reversed in part and in part affirmed.*