# WILKINSON *v.* DISTRICT OF COLUMBIA.

STREET EXTENSION; CONDEMNATION OF LAND; SPECIAL ASSESSMENTS; LIENS; LIS PENDENS.

1. Where the commissioners of the District of Columbia institute proceedings to condemn a tract of land for street extension under the several acts of Congress for that purpose, and, between the impaneling of a jury to assess damages and benefits and their verdict, the owners of the land convey the tract in several parcels of different value to different persons, who do not intervene in the condemnation proceedings, which result in the assessment of damages and benefits against the tract as a whole, one or more of such owners is not entitled to the cancelation of such assessment for benefits as an illegal charge against his parcel.

2. By the filing of the petition by the commissioners of the District of Columbia for the condemnation of land for street-extension purposes, and the service of notice on the then owners, a lien attaches to the property as it then stood with the divisions and subdivisions that then existed, which a subsequent purchaser of any portion of the land is not at liberty to disregard.

3. By the acts of Congress to condemn land in this District for street-extension purposes, an inchoate lien was created on the land proposed to be condemned, which becomes fixed as a general and indeterminate lien by the filing of a petition by the commissioners for the condemnation of the land and the service of notice on the owners, and as a special lien upon the confirmation by the court of the assessments for benefits made on the several parcels condemned by the jury impaneled to assess damages and benefits; construing acts of Congress of March 3, 1899 (30 Stat. at L. 1344, chap. 431), January 30, 1900 (31 Stat. at L. 2, chap. 4), and June 6, 1900 (31 Stat. at L. 666, chap. 809).

No. 1293.   Submitted May 8, 1903.   Decided June 29, 1893.

HEARING on an appeal by the complainant and an intervener from a decree of the Supreme Court of the District of Columbia sustaining a demurrer to, and dismissing, a bill in equity to enjoin the collection of a tax assessment and for its cancelation; the original complainant and intervening complainant having elected to stand by their bill and petition.      *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a proceeding in equity instituted in the supreme court of the District of Columbia to enjoin the collection of an assessment, and to decree its cancelation.

The facts upon which the proceeding is based are these: Charles Early and Charles C. Lancaster, as trustees, were, on January 9, 1901, and previously thereto, the owners in fee simple of a tract of land containing about 8½ acres, situated in the county of Washington, outside of the municipal limits of this city, and lying east of the line of the proposed extension of Sixteenth street, in this city, which extension was provided for by acts of Congress of March 3, 1899 (30 Stat. at L. 1344, chap. 431), January 30, 1900 (31 Stat. at L. 2, chap. 4), and June 6, 1900 (31 Stat. at L. 666, chap. 809). Acting under these several statutes, the commissioners of the District, on August 21, 1900, instituted proceedings in the supreme court of the District, by filing a petition therein for the condemnation of the land required for such proposed extension, the ascertainment of the value of it, and the ascertainment of the amount of the benefits to be assessed against adjacent property that should be found to be benefited by the proposed extension. Publication under these proceedings was made and notice was duly served on the parties in interest in November, 1900; and on January 4, 1901, a jury was impaneled in the cause and personally viewed the property; and on the same day (January 4, 1901) began to hear testimony therein. On March 29, 1901, the jury filed their verdict in court, whereby they awarded compensation to Early and Lancaster, trustees, in the sum of $11,615 for about 4 6-10 acres taken for the street, and assessed benefits to the amount of $2,137 on the whole tract of 8½ acres in the names of Early and Lancaster, trustees.

Intermediate between the time of the impaneling of the jury (January 4, 1901), and the time of the rendition of its verdict (March 29, 1901), namely, on January 9, 1901, Early and Lancaster, trustees, conveyed the tract in 16 separate and distinct parcels to 14 several persons, of whom the appellants were

two. These several parcels are alleged to have been of different value; and that of the appellant Wilkinson did not abut on Sixteenth street, while that of the appellant Frost did adjoin that street.

Desiring to negotiate loans on their several parcels, the appellants sought to procure certificates from the proper officers, under the law, as to the condition of the taxes and assessments against their said several parcels, and were given certificates which showed the assessment of $2,137 as a charge upon the whole tract and upon each and every part and parcel thereof. Thereupon the appellant Wilkinson instituted the present proceedings by filing a bill in equity to cancel the said assessment as an illegal charge against his parcel; and the appellant Frost intervened with a petition, almost identical with the bill of complaint in its substantial statements, and was made a party to the bill as complainant. In the bill and petition the facts were set out substantially as herein recited, and relief was duly prayed.

The defendant, the District of Columbia, demurred, and its demurrer was sustained. The complainants electing to stand by their bill and petition, the court decreed the dismissal of both; and from such decree of dismissal the complainant and intervener have appealed.

*Mr. Charles C. Lancaster* and *Mr. John Ridout,* for the appellants:

1. The facts in the record show conclusively that the tract of 8.548 acres, lying on the east side of Sixteenth street extended, had been subdivided and conveyed, January 9, 1901, by metes and bounds, into 16 separate and distinct pieces and parcels of land, to 14 different purchasers by recorded deeds; that these pieces and parcels of land were of varying areas, some fronting on Sixteenth street extended and some on Piney Branch road, and the several pieces and parcels of land were of different values, and that these facts were proved before the jury and known to them nearly four months before they filed their verdict in the district court. Upon these admitted facts,

it was the legal duty of the jury to assess separately benefits, if any, upon each of the 16 separate and distinct pieces and parcels of lands as shown by the proof before them and the records of the recorder of deeds. Act of Congress of March 3, 1899 (30 Stat. at L. 1344); act of January 30, 1900 (31 Stat. at L. 2); act of June 6, 1900 (31 Stat. at L. 666); Welty, Assessment, §§ 110, 111, 220, 311, 319; *Bauman* v. *Ross,* 167 U. S. 591; 10 Am. & Eng. Enc. Law, 1st ed., pp. 299, 300, and authorities cited.

2.    The doctrine of *lis pendens* does not apply in tax or condemnation proceedings. Bennett on Lis Pendens, §§ 88, 89, and 179.   The doctrine does not apply in this case for the following reasons:   (*a*) The appellants were legally bound to take notice of the proceedings for the extension of Sixteenth street. (*b*) The appellants and their property were before the jury nearly four months before said jury filed its verdict. *Wight* v. *Davidson,* 181 U. S. 382; *Parsons* v. *D. C.* 170 U. S. 51; *Bauman* v. *Ross,* 167 U. S. 584.

3.    The lien for street assessments attaches at the time fixed by the statute, and subsequent purchasers are regarded as purchasers *pendente lite.*   24 Am. & Eng. Enc. Law, 1st ed., p. 76; § 8, act of March 3, 1899, and act of June 6, 1900.   In this case the verdict of the jury was not finally ratified and confirmed by the district court until June 19, 1902.   Therefore the appellants were not purchasers *pendente lite,* for they had purchased and their deeds were recorded nearly eighteen months prior to the attachment of the lien.   Lyon v. Alley, 130 U. S. 189.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas* and *Mr. A. H. O'Connor,* assistants for the appellee:

1.    When the petition had been filed under the authority of the act of Congress, and publication and service of notice had been made in accordance therewith, the supreme court of the District of Columbia, sitting as a district court, had complete jurisdiction over the whole subject-matter, and was authorized to proceed over the condemnation of the land, and the as-

sessment of benefits in accordance with the status of the land as it existed at that time. Every person interested in the land was from that time bound by the proceedings, and were properly before the court. *Wight* v. *Davidson,* 181 U. S. 282; *Parsons* v. *D. C.* 170 U. S. 51.

2.   The doctrine of *lis pendens* came into operation, and every person purchasing any land subject to these proceedings took his title subject to any verdict or decree which might thereafter be rendered in the proceedings. That this doctrine applies to proceedings of this nature has been frequently held, as will hereafter be shown, and a case can hardly be imagined where the necessity of the doctrine is greater than here. The proceedings involved—probably 250 or 300 separate pieces or parcels of land, and, if the jury of condemnation were to attempt to follow the changes, or attempted changes, of title that might intervene between the commencement of the proceedings and their verdict, rendered months thereafter, the proceedings would never terminate, and still more would this be the fact if the land should be subject to change of title affecting these proceedings up to the time of confirmation of the verdict. Where the owner conveys, pending proceedings, the grantee takes subject to the proceedings. Lewis, Eminent Domain, § 338, citing *Plumer* v. *Wausau Boom Co.* 49 Wis. 449; Mills, Eminent Domain, § 95; 13 Am. & Eng. Enc. Law, 870, and cases cited in note 1. *Lis pendens* is, in fact, but one phase of the law of *res judicata.* 21 Am. & Eng. Enc. Law, 2d ed. pp. 601, 602. Some of the leading cases on the subject are: *Newman* v. *Chapman,* 2 Rand. (Va.) 93; *Murray* v. *Ballou,* 1 Johns. Ch. 566; *Warren County v. Marcy,* 97 U. S. 96; *Union Trust Co. of N. Y.* v. *Southern Inland Navigation & Improvement Co.* 130 U. S. 565. The doctrine of *lis pendens* applies to suits in law and equity. 21 Am. & Eng. Enc. Law, 2d ed. 601. It applies to divorce suits and suits for alimony. 13 Am. & Eng. Enc. Law, 800. And to bankruptcy proceedings. Id. 84. It applies to condemnation proceedings. 21 Am. & Eng. Enc. Law, 2d ed. 664; *Plumer* v. *Boom Co.* 49 Wis. 449; *Schriver* v. *C. E. Railway,* 115 N. Y. 345; *C. E. & L. S. Railway* v. *Catholic Bishop of Chicago,* 119

Ill. 532; *Shirk* v. *Whitten,* 141 Ind. 455; *Hartley* v. *Keokuk, etc., R'y. Co.* 85 Iowa, 455, at 466. Appellants in their behalf cite to the contrary Bennett on Lis Pendens, §§ 88, 89, and 179. Upon examination of the authority cited by counsel for appellants it will be found that §§ 88 and 89, instead of asserting that the doctrine of *lis pendens* will not apply to proceedings for condemnations, merely assert that the doctrine of *lis pendens* will not prevail against the imposition of taxes nor proceedings for the condemnation of property, and are in effect against the proposition of appellants. While section 179 makes the general assertion that a proceeding for condemnation is not *lis pendens,* no authority is cited in support of the text, and it is directly against the authorities above cited. Purchasers *pendente lite* act at their peril, and are not necessary parties to the suit. 15 Am. & Eng. Enc. Law, 900; *Kern* v. *Hazelrigg,* 11 Ind. 446. They may be admitted parties in the discretion of the court, but cannot demand that right, and they are bound by the decree of the court. *Mellon* v. *Moulin Iron Works,* 131 U. S. 352; *Eyster* v. *Gaff,* 91 U. S. 521.

3. The appellants do not claim that they were without notice of the proceedings when they purchased the property, and, not having affirmatively alleged in their bill and petition respectively the want of actual notice, they will be presumed to have had notice. *Murray* v. *Ballou,* 1 Johns. Ch. 566; *Heatley* v. *Finster,* 2 Johns. Ch. 158; *Murray* v. *Finster,* 2 Johns. Ch. 155. A purchaser with actual notice is guilty of collusion and fraud, and to relieve him of this charge his bill should show affirmatively want of notice. *Ibid.*

Mr. Justice MORRIS delivered the opinion of the Court:

The contention of the appellants is that, as the conveyances to them were made before the rendition of the verdict of the jury, the jury was required to take notice of them and of the division of the tract into parcels which they made; and it should have assessed the parcels separately, and not the tract as a whole; and that by its failure to do so the whole assess-

ment was rendered illegal, null, and void. This contention we regard as wholly untenable and without warrant in law or in reason.

It may be conceded as true that, in cases like the present, when a jury is called upon to assess property for benefits or damages, it must take the property as it finds it, with the divisions and the subdivisions which it finds and the several owners who are therein interested; and it will not do to take several parcels of land and assess them as one whole because at one time they may have constituted one entire and undivided tract. We do not understand anyone to contend for a contrary doctrine in the present case. But it does not follow from this that, after the institution of proceedings for the condemnation of property and for the assessment of benefits and damages, parties may deal with such property in total disregard of the proceedings; and that not only the petitioners in the proceedings,— that is, the commissioners of the District of Columbia,—but the court and jury also, are required to watch the land records with vigilant scrutiny up to the very moment when the verdict of the jury is rendered, to ascertain what divisions, if any, and what conveyances thereof have been made. Any such requirement as this would be an absurdity, and would simply render it impossible to conduct legal proceedings in an orderly manner.

It is well-settled law, so well settled as that it must be regarded as elementary, that when a bill is filed in equity to enforce a claim against real estate, and summons is issued thereon to the then owner of the property, a lien is created, which no one who afterwards deals with the property is at liberty to disregard; and the party who seeks to enforce the lien is under no obligation whatever to take any notice of such dealing, or of any conveyances of the property subsequent to the attachment of his own lien. This is in accordance with the well-known doctrine of *lis pendens*.

Now there is nothing in the present case to exclude it from the operation of this doctrine, which, it may be remarked, is the doctrine of right reason as well as of equity. The several acts of Congress mentioned provided for the extension of

the street and the taking of the land for the purpose, and in themselves created something in the nature of an inchoate lien. But by the filing of the petition for condemnation, and the assessment of benefits and damages, and the service of notice thereof on the parties then in interest, the lien undoubtedly attached to the property as it then stood, and with the divisions and subdivisions that then existed. It was the duty of the commissioners of the District, as far as they could, to ascertain such existing conditions, and the owners of the several parcels of land to be affected by their proceeding; and to file their petition against the land and its several owners as they then found them. They were not required to do the impossible thing of anticipating the future; nor could they in reason be required to watch subsequent conveyances, and to modify their proceedings from time to time in accordance with such conveyances. There might never be any end of the proceedings, if this were required; and the result would be endless confusion and a total failure of justice in this regard.

The appellants seem to think, and indeed in their bill and petition they allege, that it was the duty of the jury of condemnation to consult the land records, and to keep an account of all conveyances, not only those that were made before the institution of the proceedings, but even those which were made while they were in deliberation of the subject. This proposition, of course, is too absurd to be considered for a moment. Undoubtedly if, after proceedings instituted, parties purchased in good faith, and sought in good faith to intervene in the proceedings, the court might properly permit their intervention, if the proceedings were not unduly hindered thereby. But it cannot be held that they have a right to intervene. They must be held to take the property with the burden imposed upon it by the pendency of the suit, and that is the burden of a lien.

But it is argued on behalf of the appellants that, because the acts of Congress of March 3, 1899, and June 6, 1900, provide "that when confirmed by the said court the assessments shall severally be a lien upon the land assessed, and shall be collected as special improvement taxes in the District of

Columbia," the lien only attached upon the confirmation of the verdict of the jury by the court, and did not attach by virtue of the filing of the petition and the service of notice thereunder. This argument, however, is based under a total misapprehension of the meaning of the several acts. The lien, which, as we have said, might to some extent be regarded as inchoate from the date of the passage of the acts, became fixed by the filing of the petition and the service of notice; but as the amount of it was not yet ascertained, and the apportionment of it was yet indefinite, and as it was the purpose of the proceeding to ascertain such amount and to apportion it properly, the lien, which was only a general and indeterminate lien at the filing of the bill and service of notice, became by its definite ascertainment and special apportionment a special lien severally on the several parcels. This is what the provision cited means. It is not that the lien did not have existence before the confirmation of the verdict of the jury, but that before such verdict and confirmation it could not be ascertained how much of the general lien should be charged against each several parcel.

The complainants find hardship in their position, inasmuch as the District of Columbia cannot now procure to have the assessment apportioned, and they allege that they cannot apportion it between themselves. But if there is hardship it is of their own creation. Nor do we see any reason why they may not have an apportionment and settlement between themselves by proceedings in equity or otherwise that would not involve the District of Columbia in their controversy. At all events, the hardship is not sufficient to justify the present proceedings.

We are of the opinion that the court below was right in dismissing the bill and petition of the appellants, and that the decree of dismissal should be *affirmed, with costs. And it is so ordered.*