# ACADEMY OF THE SACRED HEART OF MARY *v.* PHILADELPHIA, BALTIMORE, & WASHINGTON RAILROAD COMPANY.

EVIDENCE; NUISANCES; LICENSE; TRIAL; DAMAGES; INSTRUCTIONS TO JURY.

1. In an action by a private school against a railroad company for damages for a nuisance caused by the operation of the road near its school building, it is not error for the court, after evidence of the size, character, and appearance of the building has been admitted, to exclude the plaintiff's offer to show the structural value of the building, where no damages for permanent depreciation in value are claimed in the declaration, and plaintiff's counsel in offering the testimony expressly states that the plaintiff only claims damages "for the inconvenience and the nuisance for the time being."

2. While a license to a railway company to occupy temporarily a public reservation affords no protection to the railroad company as against a property owner injured by the operation of the railroad on such reservation, it is admissible in evidence as showing that the company was not a mere trespasser, in an action by the property owner against the company for maintaining a nuisance.

3. It is not error for the trial court to refuse a special instruction to the jury, where the general principle it contains is given in the general charge, with special application to the evidence.

4. A private school has no right of action against a railroad company for damages for the obstruction of a street at points not adjacent to its property, and which did not prevent ingress to and egress from its property by way of the abutting street, at any point thereon or adjacent thereto. The inconvenience in such a case is one to the general public.

5. It is not error for the trial court to refuse a special instruction where there is no evidence to support it, or to refuse a special instruction to the same general effect as one already given.

No. 2150. Submitted January 3, 1911. Decided February 6, 1911.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for damages for an alleged nuisance.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, Academy of the Sacred Heart of Mary, plaintiff below, brought this action against the appellee, Philadelphia, Baltimore, & Washington Railroad Company, to recover damages resulting from an alleged nuisance.

The evidence shows that the plaintiff is an incorporated institution of learning. In 1870 it acquired title in fee to a lot fronting about 100 feet on C street in the city of Washington. Shortly thereafter it erected a building thereon, near the corner of 8th street, 36 feet wide and 85 feet long, consisting of three stories and a basement. It was provided with necessary and suitable schoolrooms, as well as sleeping rooms for the resident managers and teachers, who were sisters of the Dominican order. Near this location, Maryland avenue, Virginia avenue, and 8th street converge. Nearly opposite across C street lies public reservation 113, extending from 7th to 9th street. The railroad company had long been running into the city, maintaining a passenger station at 6th and B street N. W., a freight warehouse on Maryland avenue, between 9th and 10th streets, and probably two tracks on Virginia and Maryland avenues between 7th and 9th streets. This was by authority of law. For the purpose of enabling the railroad company to deliver material for the erection of buildings for the Agricultural Department, the National Museum, and the municipal government, a revocable license was granted it by the then Secretary of War, dated December 4, 1904, to occupy reservation No. 113 with necessary tracks and sidings. Between November 5th, 1903, and November 5th, 1906,—the time alleged in the declaration,—defendant erected and main-

tained a number of tracks, as well as platforms for unloading cars, on said reservation. The nearest track is 90 feet from plaintiff's corner; the most distant 285 feet. It is 200 feet from the corner of the building to 7th street. These tracks were used by all southern trains also. During the two years complained of, there were more than 500 train movements every twenty-four hours. A great deal of yard work and shifting was done. Unattached engines were constantly standing on those tracks. Soft coal was used. The smoke and noise were incessant. Whenever windows were raised in plaintiff's house quantities of soot were carried in, soiling window seats, walls, and floors, as well as furniture, curtains, etc. Windows of schoolrooms could not be kept open in warm weather. The school work was greatly interrupted by the smoke and noise. Seventh street crossing was constantly blocked by cars and engines to the great inconvenience of citizens wanting to cross, and sometimes detaining pupils. Sometimes disagreeable smells came from stock and poultry cars stopped on the tracks opposite the building. Passengers from excursion cars were sometimes discharged there. Some were often drunk, and frequent swearing was heard from them and trainmen. It was difficult to sleep at night in the building, because of the constant loud noises. The number of pupils from 1903 to 1904 was 80 to 85. From 1904 to 1906 the number did not vary more than ten a year. About fifteen sisters lived in the academy. While there was proof that students who had to cross at 7th street were frequently tardy, there was no proof that the aforesaid conditions caused any to cease attendance during the period complained of. There was no proof of the actual pecuniary damage caused, or of any depreciation in the rental value, or the pecuniary value of the use and occupation during the period. Defendant's prayer to direct a verdict was overruled, and the jury, upon the evidence and charge of the court, found for the defendant. Motions for new trial having been overruled, judgment was entered on the verdict, from which plaintiff has appealed.

*Mr. Andrew Wilson* and *Mr. Noel W. Barksdale* for the appellant.

*Mr. Frederick D. McKenney* and *Mr. John S. Flannery* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The first assignment of error is on the exclusion of evidence offered by the plaintiff, of the value of the building. A competent witness was offered and asked to state the structural value of plaintiff's buildings.

In answer to the inquiry of the court, if damages for permanent depreciation of value were claimed, counsel for plaintiff replied: We do not claim for anything except for the inconvenience and the nuisance for the time being; that is all.

The Court: You may show the depreciation of the rental value of the building.

Counsel: The witness is not competent on the question of rental value.

The Court: I take it, from the opening statement, that there is no claim for permanent depreciation in value.

Counsel: I take it, under our declaration, we could not recover for that; that is, not for the purpose of getting any damages for the permanent depreciation of the building, but it is rather to show the character of the building, to the comfortable use and enjoyment of which these sisters were entitled.

The evidence was excluded and exception noted.

Upon the pleadings and the disclaimer of counsel, we perceive no error in the court's action. The size, character, appearance, and uses of the building had been fully proved; and it was to the injury done to the use that the action was directed.

Another assignment of error is on exception taken to the introduction in evidence, on behalf of defendant, of the special license of the Secretary of War permitting the defendant to occupy temporarily with its tracks public reservation No. 113.

The plaintiff objected on the ground that the government could give the defendant no authority that would avail as a defense to the action. The court held it admissible to show that defendant had a legal right to operate on the reservation, and announced that its effect would be governed by instructions to the jury. When the cause was submitted to the jury, the court refused a prayer of defendant to the effect that, by reason of the authority given, if the defendant operated its trains with reasonable care, it would not be liable for smoke, dust, etc., necessarily resulting from said use.

Of his own motion the court then charged the jury that, as the square was public property, the government could give the right to its use; but if private rights were affected, as a result, the license was no protection against the private owner; and that one of these rights was the free and undisturbed enjoyment of the uses of his property. We agree with the learned trial justice that the license was admissible to show that the defendant was not a mere trespasser upon the public property occupied; but could not have the effect to relieve it of responsibility for the invasion of the plaintiff's premises in the manner complained of. A special prayer of the plaintiff was also given to the same effect.

The remaining assignments of error relate to the refusal of special prayers of the plaintiff, and may be considered under one head. One of these was an abstract proposition relating to the rights of property, and the general principle which it contained was given in the charge as above recited, with special application to the evidence. Another that was refused was to this effect. If by the obstructions of 7th and 9th streets for unreasonable lengths of time, at places where pupils attending, and persons living in, the academy had to pass in order to get to and away therefrom, the jury may award such damages to the plaintiff for special inconvenience and injury thereby caused to it, as they may deem reasonable and just. A second prayer on the same line added that if, by reason of the nuisances created by noise, smoke, jarring of the building, etc., many persons who had been in attendance upon plaintiff's school

ceased to attend the same, to the injury of the plaintiff, the
jury might award damages therefor. The first of these prayers
was refused on the ground, substantially restated in the general
charge, that the plaintiff had no right of action for inconven-
ience caused individuals by the obstruction of the street at points
not adjacent to plaintiff's property. This was a correct state-
ment of the law as applied to the evidence. There was no evi-
dence of any obstruction preventing ingress and egress from the
plaintiff's lot by way of the abutting street, at any point there-
on, or adjacent thereto. The inconvenience referred to was one
to the general public. The additional prayer was rightfully re-
fused, because there was no evidence whatever that pupils were
lost to plaintiff's school by reason of any of the injuries com-
plained of. This limitation of the rule of law was made perfect-
ly plain by the further instructions given at the request of plain-
tiff and in the general charge. A prayer given for the plaintiff
was that the jury might assess damages in such sum as in their
opinion will fairly compensate plaintiff for the injury it has
sustained in the deprivation of the use and enjoyment of its
property, during the period covered by the declaration; and
it is not necessary that the jury should be able to fix the damages
with absolute certainty, but may assess the same, acting as fair
men, in such sum as in their judgment will compensate plain-
tiff for the injuries it has sustained. Two other similar in-
structions prayed for were also given. Each of these contained
an elaborate recital of the various injurious acts of the defend-
ant relating to the emission of smoke, the making of constant
noise, the jarring of the building, emission of offensive smells,
etc., during the said period.

Another special prayer given for the plaintiff was that the
proper measure of damage is such sum as will reasonably com-
pensate plaintiff for the deprivation of the beneficial use and
occupation of the property, and for such molestation, annoyance,
and disturbance in the enjoyment of its premises as it has suf-
fered, if any, by the acts of the defendant. Exception was tak-
en, and error is complained of, for the refusal of another
special instruction to the same general effect. Obviously, this

was not error.   In the general charge, moreover, which was de-
clared to be perfectly satisfactory by the plaintiff, and was not,
therefore, excepted to, the jury were instructed that to what-
ever extent private property may have been injuriously affected
by the use defendant made of the public property, it was liable.
Without reiterating the elements of damage, the court referred
the jury to the special prayers given at the request of the plain-
tiff, as correctly stating the same.

In support of this contention plaintiff relies on the decision
in *Baltimore & P. R. Co.* v. *Fifth Baptist Church,* 108 U. S.
317, 27 L. ed. 739, 2 Sup. Ct. Rep. 719.   In our opinion there
was no failure of application of the doctrine of that case.   That
action was brought for similar acts by the railroad company.
It was alleged that the effect of the nuisance created by defend-
ant was to interfere with religious exercises, break up the Sun-
day school, and destroy the value of the building as a place of
public worship.   Evidence was introduced tending to support
these allegations, and further that the rental value of the build-
ing was from $1,200 to $1,600 per year and had been prac-
tically destroyed; also that the railroad company's occupation
had depreciated the value of the property 50 per cent.   In the
present case there was no proof that the school was broken up,
or reduced in size with a loss of revenue.   Permanent deprecia-
tion in value was disclaimed; and there was no proof of injury
to rental value.   The claim was limited to the damage result-
ing from the acts which harrassed and annoyed the plaintiff in
its uses of the property.   The jury were authorized to assess
damages for these, without evidence of actual pecuniary loss.
It seems somewhat strange that, under the evidence and instruc-
tions, the jury should not have awarded some damages to the
plaintiff, but if the jury failed in its duty the matter was one
for the court to correct on motion for a new trial.   No error
of law having been shown to have been committed in the intro-
duction of the evidence and charge of the court, the refusal of
a new trial is not a ground of appeal.

The judgment will be affirmed, with costs.        *Affirmed.*