M. B. SIEGEL, Inc. Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed February 16, 1927—Rehearing denied April 15, 1927.*

1. MUNICIPAL CORPORATIONS—*when city is not liable for damage to lessee because of local improvement.* A city is not liable to a lessee for damage to the leasehold caused by a change in the grade of the street in front of the leased premises where the lessee was familiar with the premises and at the time of entering into the lease had actual notice that some sort of improvement was contemplated because some preliminary work had been done and could have ascertained by inquiry the exact nature of the improvement, the ordinances having been passed and the petition and assessment roll filed and notices given, although the premises in question were not to be condemned.

2. SAME—*interests acquired after institution of improvement or condemnation proceedings are subject to rights of city.* Rights acquired in property after proceedings have been instituted to specially assess or condemn it for a local improvement are subordinate to the rights of the petitioner, and where no property is to be condemned the filing of the petition and assessment roll constitutes the institution of the assessment proceedings.

THOMPSON, J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

FRANCIS X. BUSCH, Corporation Counsel, and HARRY P. BEAM, (TOLMAN, SEXTON & CHANDLER, of counsel,) for appellant.

WOLFSOHN & FIREMAN, and LEESMAN & ROEMER, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit is an action in case brought by M. B. Siegel, Inc., a corporation, against the city of Chicago to recover damages caused by a local improvement constructed by defendant changing the grade of the street. The declaration alleges plaintiff leased the premises described for a term of three years from May 1, 1924. The leased premises are adjacent to South Water street and Wells street, are situated on the south side of South Water street, and consist of a first floor 13½ feet on South Water street by 38½ feet on Wells street. The building of which the leased premises are a part is 80 feet by 150 feet, and is at the southwest corner of South Water street and Wells street. The premises were leased and used for the wholesale and retail of cigars and tobacco, the operation of a soda fountain and the sale of non-alcoholic drinks. Ordinances were passed by the city council for the improvement of West South Water street (now called Wacker drive) by widening the street and then making it a two-level thoroughfare as widened and the raising of the grade on Wells street to meet the superstructure to be constructed on South Water street. The ordinances provided the cost of both improvements should be paid by special assessments. Special assessments were levied for the improvements against the real estate in which the leased premises were located and the assessments were confirmed. Notice of the assess-

ments was given by mail to the person who last paid the taxes on the real estate and also published and posted as required by the Local Improvement act. It is admitted no notice was mailed or sent to plaintiff. The ordinances were passed, the petition and assessment roll filed and notice given before plaintiff's lease was made, but the assessment was not confirmed until after the lease was executed. When the improvement was completed the upper level of South Water street, which was for use by light traffic and pedestrians, was above the former street level, and the lower level, which was for use by heavy traffic, was below the former street level. The sidewalk on the upper level was over five feet above the former sidewalk level and about the same distance above the store floor. The lower level of the street was considerably below the store floor. It is not denied by defendant that the value of plaintiff's lease for the business it was used for was substantially destroyed. M. B. Siegel, president and treasurer of plaintiff, testified it removed from the leased premises in August, 1925, and that it was still paying rent; that when it removed it secured from the owner an extension for the payment of rent; that the last rent paid was August 31, 1925, and plaintiff introduced a letter from the present owner of the building, dated December 28, 1925, asking plaintiff to make the check for rent for January payable to the present owners, who had purchased from the former owner. Defendant pleaded the general issue and filed a special plea, but as no point is made on the pleadings they need not be further referred to. A jury was waived and the case was heard by the court. The court found defendant guilty, that plaintiff had sustained damage to the amount of $4745, and rendered judgment for that sum. Defendant prayed an appeal, and the trial court certified that the provision of the constitution that private property shall not be taken or damaged for public use without just compensation is involved, and the appeal was allowed to this court.

Appellant contends that as there was no negligence alleged, if any recovery can be had it must be by virtue of the constitutional provision referred to; that the test in an action for damages to property from the construction of a public improvement duly authorized by law is the effect of the improvement upon the property as a whole, and that if the effect on the property as a whole is a benefit and not a damage, then there is no liability. It is further contended by appellant that in the special assessment proceedings it was conclusively adjudicated against all parties in interest that the property was specially benefited by the improvement and was not damaged. Appellant also contends that, in any event, appellee cannot recover damages, for the reason that when it entered into the lease mentioned in the declaration it had both actual and constructive notice of the improvement and the change of grade.

In the view we take of the case it will only be necessary to determine whether appellee had notice of the proceedings for making the improvement and paying for it by special assessment when it entered into the lease. Just when the ordinances were passed is not shown by the evidence, but counsel for appellant stated at the trial, and it was not disputed, that the ordinances were passed in 1922. The evidence shows the work on the improvement began during November, 1924, and was completed about January 1, 1926. Counsel for appellant say, and it is not denied, that the petition and assessment roll were filed and the necessary notices given in the special assessment proceedings before the lease was made, but there had been no judgment of confirmation entered when the lease was entered into. One ordinance provided for the condemnation of certain property on the north side of South Water street for the purpose of widening the street and that a special assessment be levied to defray the cost. The building in which appellee had a leasehold interest was on the south side of the street and was not affected by the condemnation

of property on the north side. About the same time that ordinance was passed another ordinance was passed for improving the street as widened, the cost to be paid by special assessment, and it was stipulated both ordinances were introduced at the hearing on the special assessment for making the improvement; that part of the cost of the improvement was assessed against the real estate in part of which appellee had a lease, and that it was adjudged in due course that the property was not assessed more than it was benefited or more than its proportionate share of the cost. Arthur Sullivan, a civil engineer and bridge-designing engineer for the city of Chicago, testified that at the time the lease was signed West South Water street had been temporarily re-adjusted by inclining the roadway along the street from Wells street west, and the roadway of Wells street had been temporarily re-adjusted by inclining it from South Water street south. The sidewalks had been left at their original level and a bulkhead constructed along the west curb line of Wells street and the curb line of South Water street. Steps were built three and one-half feet high connecting the sidewalk level to the new roadway level. The lease itself was a regular printed stock form of the Chicago Real Estate and Renting Agents' Association, but it contained an additional typewritten rider providing that all alterations, improvements, constructions, renewals or repairs of the premises during the term of the lease, which are or may be required by the ordinances and regulations of the city of Chicago and by the lessee, shall be made by and at the expense of the lessee.

In view of the fact that the ordinances had been passed, the petition filed, assessment roll filed and notices given according to the requirements of the Local Improvement act and some preliminary work done toward making the improvement, we think it must be held that appellee had constructive notice, if not actual notice also, that the improvement was to be made. At least it had such knowl-

edge that if its officers had followed it up by making inquiry such officials could have learned exactly what the city was proposing to do and how the completion of the improvement would affect ingress to or egress from its premises. Appellee or its president had under former leases occupied the premises from some time in 1918, and the question is presented whether one who is familiar with the premises and is familiar with the character of the improvement proposed to be made, or at least had such notice thereof as to put him on inquiry, can enter into a lease and then, after the completion of the improvement, bring an action on the case for damages to his leasehold interest caused by the construction of the improvement. Appellee was under no obligations to enter into the lease, and under the evidence, we think, is deemed to have known how the improvement when completed would affect the premises. With that knowledge its president entered into the lease.

While the building in which appellee's leasehold interest existed was on the south side of South Water street and it was not sought to condemn any part of that building as a part of the plans of the improvement, some of the rules of law applicable in condemnation proceedings are also applicable to this case.

In *City of Chicago* v. *Farwell,* 286 Ill. 415, it was sought to condemn land for widening and improving a street and defray the cost by a special assessment. The court held the return and filing of the commissioners' report was the date for fixing the compensation to be paid, as the application for condemnation began when the petitioner filed the report of the commissioners. By analogy the filing of the petition and assessment roll in a separate assessment proceeding where no property is sought to be condemned is the beginning of the suit. If an interest is acquired in property after suit is begun to condemn, such interest is subordinate to the rights of the petitioner. So, also, are rights acquired in property after proceedings begun to spe-

cially assess it for a local improvement. *Coryell* v. *Klehm,* 157 Ill. 462, held that *lis pendens* is notice to all the world of the equities of the complainant in the subject matter of the suit.

The case of *Schreiber* v. *Chicago and Evanston Railroad Co.* 115 Ill. 340, was condemnation for right of way for a railroad. When the petition was filed the lessees were in possession under a lease which had six months to run. The lessees held over a considerable time after the petition was filed. The trial court held the lessees had no right to compensation after the expiration of the lease in force at the time the petition was filed. In affirming that decision this court said: "When the petition was filed there were some six months of an unexpired term, of which the tenants could not have been deprived without their consent, but with the company's consent, as implied by their not molesting them, they had the full enjoyment of that unexpired term. It is not reasonable that a party should ask to be compensated for the loss of an unexpired term when, in fact, he has had the full enjoyment of his entire term."

The case of *Chicago, Evanston and Lake Superior Railroad Co.* v. *Catholic Bishop of Chicago,* 119 Ill. 525, was also condemnation for railroad right of way. A tenant claimed damages under a lease of part of the property, made after the suit had begun. The court held the compensation to be paid for the property must be fixed at a valuation as of the date of filing the petition, and that a right acquired by parties after that time was acquired *pendente lite* and was subordinate to the rights of the petitioner.

Appellee contends that the rule of *lis pendens* does not apply, and quotes from *Norris* v. *Ile,* 152 Ill. 190, that three conditions must exist or concur in order to apply that rule: (1) The property involved must be of a character to subject it to the rule; (2) the court must have jurisdiction of the person and of the *res;* (3) the property must be sufficiently described in the pleadings. Appellee says the

requirement that the court must have jurisdiction of the person is absent in this case, and therefore *lis pendens* is not operative. It is true that no summons was served upon appellee nor was it named in any published or posted notice, but the notice required by law was given, and the court had jurisdiction to adjudicate and determine whether the property would be benefited by the improvement. The jurisdiction of the court was acquired in the only way it could be acquired by law to authorize it to determine whether the property was benefited as much as it was assessed, and we think there is no element lacking for the application of the rule of *lis pendens.* Appellee had actual notice of the proposed improvement before it entered into the lease, and if it did not know the nature and character of the improvement it could have ascertained by reasonable investigation before leasing the premises. Very little inquiry would have disclosed the character of the improvement and its effect upon appellee's leasehold. We are unable to see the distinction between this case and the condemnation cases we have above cited, holding that rights acquired in property after the petition to condemn has been filed are subordinate to the rights of the petitioner. It is inconceivable that appellee, with knowledge of the fact, could enter into the lease and then recover damages from appellant for doing the very thing it knew appellant had begun a proceeding in court to do. There was nothing to prevent appellee from removing from the premises before it entered into the lease and before the improvements were made and thus avoid the damages caused thereby.

For the reasons stated the court erred in finding appellant guilty and rendering judgment for appellee. The judgment of the superior court is therefore reversed.

*Judgment reversed.*

Mr. JUSTICE THOMPSON, dissenting.