## RALPH et al. v. HAZEN et al., Com'rs.

### No. 6817.

United States Court of Appeals for the District of Columbia.

Decided Sept. 13, 1937.

Rehearing Denied Oct. 7, 1937.

William C. Sullivan, of Washington, D. C., for appellants.

Elwood Seal and Walter L. Fowler, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This case relates to the condemnation of certain lands by the District of Columbia for the construction of a viaduct over a railroad grade crossing in the city of Washington.

Prior to the time when this improvement was begun, Michigan avenue between Seventh and Tenth streets Northeast in the city of Washington, was crossed at grade by the tracks of the Baltimore & Ohio Railroad. This was well known to be a dangerous grade crossing, and the viaduct involved in the present case was designed to eliminate the dangers incident to it. At the point where Michigan avenue crossed the railroad tracks from the west it became continuous on the opposite side of the tracks with a road better known as Bunker Hill road which extended for some distance to the northeast.

In the construction of the viaduct it became necessary for the District to condemn, among others, certain lands owned by one Robert A. Ralph. The western approach to the viaduct abutted upon lands of the Catholic University of America, and also was near to, but did not abut upon, the lands of the Order of Minor Conventuals. The first of these tracts was upon the north side of Michigan avenue, and the other on the south side. The claims for damages made in this case by Ralph and the two institutions aforesaid arise out of the construction of the viaduct and the approaches thereto.

The authority for the improvement is to be found in an Act of Congress approved February 12, 1931, 46 Stat. 1087 (D.C.Code 1929, Supp. II, 1935, title 12, §§ 67–70) the material portion of which reads as follows: "That the Commissioners of the District of Columbia be, and they are hereby, authorized and directed to construct a viaduct and approaches to eliminate the present crossing at grade of Michigan Avenue and the tracks and right of way of the Baltimore and Ohio Railroad Company, said viaduct to be constructed north of the present line of Michigan Avenue as may be determined by the Commissioners of the District of Columbia in accordance with plans and profiles of said works to be approved by the said Commissioners: * * * Section 1. Sec. 4. That from and after the completion of the said viaduct and approaches the highway grade crossing over the tracks and right of way of the said Baltimore and Ohio Railroad Company at Michigan Avenue shall be forever closed against further traffic of any kind."

A proceeding under this act was brought by the Commissioners of the District in the Supreme Court of the District of Columbia (now the District Court of the United States for the District of Columbia) for the condemnation of land necessary for the construction of the viaduct. This proceeding was conducted under the Act of Congress approved March 1, 1929, 45 Stat. 1437 (D.C.Code 1929, title 25, §§ 41–50, amending chapter 15, §§ 483–491, Code of 1901).

At the time of the institution of these proceedings, Ralph was the owner of certain parcels of land described for tax purposes as 133/47, 133/57 and 133/79 situated near Tenth street and Bunker Hill road, Northeast. Afterwards he acquired by purchase parcel 133/51. A portion of the above-described property was used by Ralph as a 1-stop gasoline station. All of parcel 133/79 was taken in the proceedings; two separate portions were taken from parcel 133/47; the greater part of parcel 133/57 was taken; and a small piece at the rear end of parcel 133/51 was also taken.

No part of the lands of either the Catholic University of America or the Order of Minor Conventuals was taken in the proceeding, but the institutions severally claimed damages for the erection of the viaduct and its approaches and the closing of the railroad grade crossing. It was claimed by them that they were the owners of the fee-simple title to the center of Michigan avenue in front of their property subject to the public right of way over it, and that the approaches for the viaduct would be placed in part in the bed of the

road or avenue, upon the land which was thus owned in fee by them.

A jury was impaneled according to the statute and was sworn and instructed in writing, and after due proceedings the jury unanimously returned a verdict awarding damages for the land taken from Ralph, but awarding no damages to the Catholic University of America or to the Order of Minor Conventuals. The court approved and ratified the award of the jury, whereupon the three parties aforesaid severally filed their objections and exceptions to the court's rulings, and these being denied the present appeal was taken.

It is claimed by the appellant Ralph that the damages awarded to him were entirely inadequate and that the verdict is unjust, unreasonable, and unsupported by the evidence, and is contrary to the instructions of the court.

The record discloses that the jury allowed the following damages to Ralph, to wit:

| | | |
|---|---|---|
| Tract 133/79 (4517.40 Sq. ft.) | $1,806.96 |
| Tract 133/51 ( 50.8 Sq. ft.) | 20.32 |
| Tract 133/47 (1467.41 Sq. ft.) and ( 912.8 Sq. ft.) | 3,477.96 |
| Tract 133/57 (4271.4 Sq. ft.) | 5,339.25 |
| Total damages awarded to Ralph | $10,644.49 |

It is contended by Ralph that the court correctly instructed the jury that the several parcels belonging to him should be appraised as separate properties unless several contiguous parcels were in the same ownership and the value of any two or more of such contiguous parcels should be found to be greater than the value thereof as a whole, in which latter event the value should be determined according to the grouping reflecting the greatest value. It is contended by Ralph that his properties are in actual use for the single purpose of a 1-stop gasoline service station, and that their value when separately considered was less than when considered as a whole; that it was the duty of the jury to bring in a single verdict for all of such properties, but that the jury erroneously brought in a verdict stating the damages separately as to the several parcels.

In our opinion this contention is not well taken. An examination of the record discloses that the jury might rightfully find in accordance with the court's instructions that tract 133/79 possessed a separate value and added no essential value to the remaining property for garage purposes; that the portion of tract 133/51 valued at $20.32 was not a part of the Ralph properties at the time when the proceedings were instituted but was purchased by Ralph while the proceedings were pending; that tract 133/47 included the property suitable for garage use which was valued at $3,477.96 as a separate parcel; that tract 133/57 might be separated from the garage property without materially diminishing the value of the remaining property for garage purposes. It therefore appears that upon a consideration of all parts of the Ralph property the verdict of the jury in this respect was not erroneous, and its action accordingly was properly ratified by the court.

The appellant Ralph also contends that the assessment of damages by the jury in its verdict was contrary to the weight of the evidence. It should be remembered that the burden of proving value in condemnation proceedings is upon the property owner and not upon the government, and the jury was so instructed by the court. Town of Hingham v. U. S. (C.C.A.) 161 F. 295, 15 Ann.Cas. 105; 20 C.J. 982. We have read with care the testimony of all the witnesses respecting the damages to the Ralph properties. The estimates differ very widely in amount, as appears by the following schedule: Witness Grady's estimate, $7,381.13; Houghton's, $9,207.45; Edmonston's $64,906.75; McKeever's $70,-402; Sullivan's $80,640. A study of the record, however, leads to the conclusion that the witnesses who testified to the greater damages included in their estimates not only the actual damages to the property as such, but also prospective damages to the garage business conducted upon the premises by Ralph as a going concern. This is illustrated by the testimony of witness McKeever, who appraised the damages at $70,402, and who said: " * * * After the viaduct is built a gasoline station will be practically valueless because of the fact that traffic will not go through there the way it is planned with the little 17-foot roadway west of the railroad tracks, a gasoline station has got to have traffic, does not think any prudent man will drive through a 17-foot narrow roadway and make a grade crossing over a railroad when he can with no more effort cross on a viaduct that goes over that grade crossing. * * * "

This additional consideration increased their estimates of the damages beyond that

allowed by the law. In 10 R.C.L. 145 it is said: "It generally has been assumed that injury to a business is not an appropriation of property which must be paid for. There are many serious pecuniary injuries which may be inflicted without compensation. It would be impractical to forbid all laws which might result in such damage, unless they provided a quid pro quo. No doubt a business may be property in a broad sense of the word, and property of great value. It may be assumed that there might be such a taking of it as required compensation. But a business is less tangible in nature and more uncertain in its vicissitudes than the rights which the constitution undertakes absolutely to protect. The diminution of its value is a vaguer injury than the taking or appropriation by the construction of a more popular street into which travel was diverted, as well as by competition, but there would be as little claim in the one case as in the other. The case stands no differently when the business is destroyed by taking the land on which it was carried on, except so far as it may have enhanced the value of the land."

■ It is also contended by appellant Ralph that damages should have been awarded to him because of the closing of the grade crossing over the Baltimore & Ohio Railroad Company tracks and for the building of the viaduct. It is argued by him that when the viaduct is completed and the grade crossing is closed, no vehicle will be able to reach the Ralph property by going directly along Michigan avenue, but it will be necessary that such traffic as comes from the west shall take a roundabout and inconvenient route to reach Ralph's garage, and that traffic coming from the east will be required to make a left-hand turn across a lane of traffic in order to enter the garage. These facts, however, do not constitute such an injury as to render the District liable for damages, but are damnum absque injuria. In Tomazewski v. Palmer Bee Co., 223 Mich. 565, 194 N.W. 571, 573, it is said: "If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is damnum absque injuria." . .

This rule is applicable where the closing of a street results in loss of trade or business to one in another block. German Evangelical Lutheran Church v. Baltimore, 123 Md. 142, 90 A. 983, 52 L.R.A.(N.S.) 889, Ann.Cas.1916C, 231; Guttery v. Glenn, 201 Ill. 275, 66 N.E. 305; Cram v. Laconia, 71 N.H. 41, 51 A. 635, 57 L.R.A. 282; Re Hull, 163 Minn. 439, 204 N.W. 534, 205 N.W. 613, 49 A.L.R. 320.

In the present case, the closing of the grade crossing will not deprive the respective appellants nor the public of access to appellant's lands on the opposite sides of the railroad. Such access is furnished by the viaduct for which this condemnation proceeding was instituted and the already existing public roadways. It is true that this means of access may not be as convenient as others, but that is, as we have said, a consequential injury, resulting from the exercise of the police power by the District for which no right to damages will accrue. McQuillan on Municipal Corporations (2d Ed.) §§ 1525-1527; Academy of the Sacred Heart of Mary v. Philadelphia, B. & W. R. Co., 36 App.D.C. 372; Lockwood v. Portland (C.C.A.) 288 F. 480.

■ It is also claimed by appellants that the project contemplated in this proceeding is not authorized by law. This contention is based upon the provision contained in the act of Congress above set out authorizing the Commissioners "to construct a viaduct and approaches to eliminate the present crossing at grade of Michigan Avenue and the tracks and right of way of the Baltimore and Ohio Railroad Company, said viaduct to be constructed north of the present line of Michigan Avenue, as may be determined by the Commissioners of the District of Columbia in accordance with plans and profiles of said works to be approved by the said commissioners." It is urged by appellants that the viaduct as constructed under the present plans of the Commissioners is not north of the present line of Michigan avenue, and therefore is not within the terms of the act. It appears, however, that while the viaduct is not entirely north of Michigan avenue, it is substantially so, and the entire viaduct at the point of crossing the railroad right of way is north of the avenue as it existed at the time of the institution of these proceedings. Moreover, the statute leaves to the discretion of the Commissioners the exact location of the viaduct. Washington Ry. & Electric Co. v. Newman, 41 App.D.C. 439; Briggs v. Brownlow, 49 App.D.C. 345, 265 F. 985. We therefore hold that the contention of the appellants, that the

project is not authorized by law, is untenable.

■ The appellant Ralph also contends that the proper measure of damages was not applied to parcel 133/51. Title to this parcel was acquired by Ralph after the institution of the condemnation proceedings. For many years prior thereto it had been used by him as part of his gasoline station. The court instructed the jury that parcel 133/51 should be viewed as not being in the same ownership as the Ralph properties for the purpose of assessing damages.

This instruction was correct. In Chicago, E. & L. S. Ry. Co. v. Catholic Bishop, 119 Ill. 525, 10 N.E. 372, 376, the court said in part: " * * * The compensation to be paid by appellant must be fixed by the valuation of the property at the date of the filing of the petition." See, also, Wilkinson v. D. C., 22 App.D.C. 289; Lloyd v. Fairhaven, 67 Vt. 167, 31 A. 164.

■ Appellants also contend that the court erred in refusing to permit the jury to consider damages in favor of Ralph because of his claim to ownership of the fee-simple title to the center of Bunker Hill road in front of his property, subject to a public right of way over the same; it being claimed by Ralph that he was entitled to a private right of way over the whole of the road throughout its entire length. The trial court refused so to rule and refused to permit the jury to consider damage either to his alleged fee-simple title in the road bed or to the right of way. A similar question was raised by the Catholic University of America and by the Order of Minor Conventuals, neither one of whom was the owner of property actually taken by the condemnation in the case. However, the fee simple in the road, if it exists, is subject to a public right of way, and the present use with the viaduct and approaches does no more than continue a use of that easement. Moreover, Bunker Hill road, subject to the public easement, is still a public road and is subject to such alteration as is necessary for the public safety.

■ And, further, it is well settled that no damages can be recovered because of a change of grade in a street, and that the erection of a viaduct is nothing but a change in street grade.

This court in Osborne v. D. C., 63 App. D.C. 277, 72 F.(2d) 70, 71, said:.

"The right of the District of Columbia, and its predecessors in the government of the city of Washington, to grade and regrade its streets without liability for consequential damages, is established. Goszler v. Georgetown, 6 Wheat. 593, 5 L.Ed. 339; Smith, to Use of Cushing v. Corporation of Washington, 20 How. 135, 148, 15 L.Ed. 858; Sauer v. New York, 206 U.S. [536], 544, 27 S.Ct. 686, 51 L.Ed. 1176; District of Columbia v. Atchison, 31 App.D.C. [250], 260; Hutcherson v. District of Columbia, 39 App.D.C. [512], 514.

"In Smith v. Corporation of Washington, supra, the Supreme Court said that changing the grade of a street is neither a trespass upon adjacent property nor the erection of a nuisance injurious thereto, and that 'the law on this subject is well settled, both in England and this country. The cases are too numerous for quotation; a reference to one or two more immediately applicable to the questions arising in this case will be sufficient.' So, in Callender v. Marsh, 1 Pick. (Mass.) 418, a street was so dug out as to lay bare the foundation of plaintiff's house and endanger its fall; in Green v. Borough of Reading, 9 Watts (Pa.) 382, 36 Am.Dec. 127, the street in front of plaintiff's house was raised five feet; in O'Connor v. Mayor, etc., of City of Pittsburgh, 18 Pa. 187, a . street was lowered seventeen feet, necessitating the rebuilding of a church thereon.

"In these cases, as in many others, the unquestioned inconvenience and expense brought to the plaintiffs by the public improvement was held to be damnum absque injuria." See, also, Sauer v. N. Y., 206 U.S. 536, 27 S.Ct. 686, 51 L.Ed. 1176; Barney v. Keokuk, 94 U.S. 324, 24 L.Ed. 224; Northern Transportation Co. v. Chicago, 99 U.S. 635, 25 L.Ed. 336; District of Columbia v. Robinson, 180 U.S. 92, 108, 21 S.Ct. 283, 45 L.Ed. 440.

We have carefully examined the other assignments of error set out by the appellants, and we are satisfied that no error to the prejudice of appellants appears in the record. In our opinion, the case was submitted to the jury with proper instructions, and the contentions of the parties were fairly considered and correctly decided by the court.

The decision is affirmed.

Affirmed.

VAN ORSDEL, Associate Justice, departed this life before this opinion was handed down.