UNITED STATES of America,
Petitioner,

v.

AVIGATION EASEMENT OVER 40
ACRES OF LAND, MORE OR LESS,
situate in the vicinity of ANCHORAGE,
TERRITORY OF ALASKA,

William J. Wagner, Trading as Alaska
Broadcasting Company and Elizabeth
Phillips, and All Unknown Heirs of Any
and All Persons Herein Named De-
fendants, if Now Deceased, and All
Other Persons or Parties Unknown
Claiming Any Right, Title, Estate, Lien
or Interest in the Real Estate De-
scribed Herein, Defendants.

Civ. No. A–6281.

District Court, Alaska
Third Division, Anchorage.
April 24, 1956.

**McCARREY, District Judge.**

The United States Government filed a petition on the 10th day of July 1950 in a condemnation proceeding, wherein the Government sought an avigation easement over 40 acres of land, more or less, belonging to the defendants, situated in the vicinity of Anchorage, Alaska, and a Judgment on Declaration of Taking was signed on the same date by the court.

Schedule "B" purports to be a schematic site plan prepared by the Civil Aeronautics Administration of KFQD radio station tower, showing the transmitter building and accompanying facilities heretofore constructed upon the land by the defendants proposed to be condemned by the Government.

The "Judgment on Declaration of Taking" is for a perpetual avigation easement and right-of-way for the free and unobstructed passage of aircraft in, through and across all of the air space extending above the altitude of 250 feet above mean sea level. The Government also seeks to take a continuing right to clear and to keep clear all obstructions infringing upon or extending into or above said air space, and for this purpose, to demolish and remove all or part of the existing broadcast tower located on said land, together with the right of ingress and egress to effectuate such result. Such a taking would be valueless without the right to remove and keep clear said corridor of air space.

To reduce the proposed condemnation to plain language, the Government seeks a perpetual avigation easement in the air space above the altitude of 250 feet above mean sea level. Such taking required the removal of 160 feet of an existing radio tower 330 feet high.

The United States has proceeded to acquire this easement by virtue of the authority of Acts of Congress, 25 Stat. 357, U.S.C.A. Title 40, § 257; 46 Stat. 1421, U.S.C.A. Title 40, § 258a; 52 Stat. 973, U.S.C.A. Title 49, § 401 et seq.; Public Law 562, 80th Cong., 2d Sess., 48 U.S.C.A. § 485 et seq.; Public Law 872,

James M. Fitzgerald, Asst. U. S. Atty., Anchorage, Alaska, for petitioner.

E. L. Arnell, Anchorage, Alaska, for defendants.

80th Cong., 2d Sess., 49 U.S.C.A. §§ 452, 459, 551; Public Law 785, 80th Cong., 2d Sess., June 25, 1948, 62 Stat. 1027 and Public Law 179, 81st Cong., 1st Sess., Act July 20, 1949, 63 Stat. 447.

The "Judgment on Declaration of Taking" passed the easement to the United States, subject to the payment of just compensation to the owner.

On the same date, the U. S. Government deposited the sum of $51,899.09 in the registry of the U. S. District Court for the Third Division at Anchorage, Alaska, and on the 21st day of July 1950 an order was signed by the U. S. District Judge disbursing $45,000 thereof to the defendants. On the 22nd day of June 1951 an order was signed by the District Judge paying over to the defendants the further sum of $6,500.

Since the Government had obtained its easement under the "Judgment on Declaration of Taking", and the defendants received all of their money excepting the sum of $399.09 (supra), and the court was so far behind in the trial of its cases, the petition of condemnation remained dormant until March 3, 1954, at which time the defendant, William J. Wagner, moved to set the case down for trial. Thereafter on the 17th day of January, 1955, the defendant, William J. Wagner, changed counsel and moved the court for an order permitting the defendants to file a supplemental answer to the Petition and "Judgment on Declaration of Taking", stating as grounds for such an order that the defendants had sustained special damages approximating $101,-161.04 in excess of the price declared by the petitioner to be adequate compensation for the avigation easement. The motion was granted.

The petitioner then filed a motion to strike the supplemental answer for the reasons: "a. It sets forth damages of a consequential nature for which the United States is not liable in a condemnation proceeding. b. The answer fails to state a defense in law." This motion is now before the court for determination at this time.

The answer raised questions of damages regardless of the legality of the pleading; thus, briefs were ordered and filed on the questions of severance and consequential damages. It was also the opinion of the court that counsel were entitled to a "rule of thumb" to guide them in the presentation of evidence as to the question of damage, and the issue of just compensation at the time of the trial.

■ The motion to strike the supplemental answer is hereby granted, for the reason that a consideration of Rule 71A(e) clearly indicates that there is no authority for a supplemental answer in a condemnation proceeding. The rule further provides that the questions of damages may be litigated without the defendants answering, Rule 71A(e) Fed. Rules Civ.Proc. 28 U.S.C.A.

The Fifth Amendment requires payment to the owner of the value of the property taken as just compensation. Here in this case, just compensation involves more than the usual market value, since a strip of air, in and of itself, at the height proposed to be taken, ordinarily, does not have any appreciable market value. Thus, the matter before the court becomes a question of severance damage, i. e., what the Government must pay for the damage to the remaining land after the easement has been imposed.

■ The questions of what items of damage may be shown in determining the damage sustained by the defendants in the loss of the use of their land, subject to the easement, still remain. The defendants contend that they should be entitled to recover for (1) devaluation and loss of use of 32 acres of land, and, (2) removal of 330-foot tower and restoration of 170-foot tower, including labor, materials, and engineering. The fair market value of the land before and after the easement is what will determine just compensation. I am of the opinion that it is the owners' loss measured by market value, which is the criterion for determining just compensation,

and not the taker's gain. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336. The cases cited by the defendants do not in any way alter this concept. United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165; Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. New River Collieries, 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; Seaboard Air Line Railroad Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664.

■ The defendants have relied in part upon the General Motors case, United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, which made a substantial departure from the settled condemnation damage rule, and allowed consequential damage to the holder of a leasehold estate. However, the court did not change the rule in all cases, but only in cases where the Government condemned a leasehold. The case did not purport to overrule Mitchell v. United States, which had affirmed the established doctrine that consequential damages were not allowable in condemnation causes except in the special instance where a partial taking of a leasehold was involved. Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644; United States v. 0.84 Acres of Land, more or less, in Contra Costa County, D.C., 112 F.Supp. 828. This ruling of the General Motors case (op. cit. supra) was also clarified in United States v. Westinghouse, but, again, the situation involved a leasehold interest and not a taking of a perpetual easement as is the case here. United States v. Westinghouse Electric & Mfg. Co., 339 U.S. 261, 70 S.Ct. 644, 94 L.Ed. 816.

■ The defendants here indicate by the answer that they intend to introduce evidence to show the cost of removing the tower and relocating the same. The court cannot help but feel that these are consequential damages which are not compensable under any standards set up by the case law. The "Judgment on Declaration of Taking" itself indicates that the easement includes the right to remove the tower and keep the airstrip free of obstruction. It is not clear at this point why the defendants removed the portion of the tower that extended into the condemned strip of air when the "Judgment on Declaration of Taking" indicates that the Government would do this. It is felt that the other point in the defendants' brief is the only thing that can be compensated for, i. e., the devaluation and loss of use of 32 acres of land. Even here, the defendants' approach to the items of damage that can be included is not in accordance with the case law. The defendants' contention is that they should be allowed to show, because of the necessity of rearrangement of their transmitter facilities and because now 32 acres of land are necessary rather than eight, they should be allowed to recover for this loss of the use of the other 32 acres.

■ We must return, then, to the fundamental proposition of what the Government must pay for damage done to the land by reason of the taking of the easement. Such damage is classically measured by the difference in the market value of the property before and after the taking of the easement.

■ I am of the opinion that the defendant-owner is entitled only to damages resulting from the taking, arising at the time of the taking. The owner is not entitled to have considered any items arising subsequently or because of the taking Olson v. United States, op. cit. supra; Roberts v. New York City, 295 U.S. 264, at page 284, 55 S.Ct. 689, 79 L.Ed. 1429; Karlson v. U. S., 8 Cir., 82 F.2d 330, at page 337. Defendants have cited the Seaboard Air Line Railroad v. United States, supra. This case dealt particularly with the problem of interest and did not change the above rule that the amount of damage is fixed as of the date of taking, which is the filing of the declaration. If it is found that the owner is entitled to a greater sum, as in the Seaboard Air Line case, than was de-

·posited with the court, then the owner would be entitled to interest on the new amount from the time of the taking. But a loss here because of the necessity for rearrangement of the defendants' facilities is a loss arising after the taking, and a loss peculiar to these defendants because of the nature of the business. It is true that the market value may be affected, because defendant-owner rearranged his transmitter facilities and now uses up the entire 40-acre tract, but the Government is only required to compensate for the devaluation of the entire 40-acre tract because of the imposition of the easement.

As was pointed out in the Olson case [292 U.S. 246, 54 S.Ct. 708]: "Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. * * *" It is conceivable that an avigation easement could have a great effect on market value, but this is a question of proof which will be presented at the trial.

It is felt that the items indicated by the defendants in their supplemental answer and covered in their brief are items of consequential damage. Though possibly leading to hardship cases, this is a legislative problem and not a judicial one. The Supreme Court has repeatedly held that the Government should not be required to pay for this type of damage. United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729; Mitchell v. United States, op. cit. supra; U. S. ex rel. T. V. A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390. Alteration costs may be used to reduce the amount of damage, but it is doubtful that in this case that concept could be applied, as the alteration cost apparently exceeds the market value.

I am of the opinion that the proof in this case should be confined to items of damage resulting from the imposition of the easement that affect the market value of the remaining tract—in the present case, the entire 40 acres now extending upwards only to an altitude of 250 feet. The proof of the defendants should be directed at the question of how the easement affects the market value. United States ex rel. T. V. A. v. Indian Creek Marble Co., D.C., 40 F.Supp. 811, 821. In determining the diminution in market value only matters which are not conjectural, speculative or remote may be included. United States v. 0.84 Acres of Land, op. cit. supra; United States v. Miller, op. cit. supra; United States v. 357.25 Acres of Land, D.C., 55 F.Supp. 461.

For the reasons herein stated, counsel are directed to confine their proof in accordance with the principles outlined in this opinion.