UNITED STATES of America upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff,

v.

An EASEMENT AND RIGHT–OF–WAY 150 Feet Wide and 1,323 Feet Long OVER CERTAIN LAND IN McMINN COUNTY, TENNESSEE, J. M. Godsey et ux., Defendants.

No. 4290.

United States District Court
E. D. Tennessee, S. D.

Dec. 23, 1965.

Charles J. McCarthy, Gen. Counsel, T. V.A., Thomas A. Pedersen, Asst. Gen. Counsel, T.V.A., Herbert S. Sanger, Jr., T.V.A., Knoxville, Tenn., for plaintiff.

W. E. Michael, Michael & Michael, Sweetwater, Tenn., for defendants.

**FRANK W. WILSON, District Judge.**

In this case the Tennessee Valley Authority seeks to condemn an easement and right-of-way for construction and maintenance of an electric transmission line. The action is brought under authority of 40 U.S.C., Section 258a. The easement and right-of-way here sought to be condemned consists of a strip of land 1,323 feet long and 150 feet wide. The only issue is the value of the easement taken.

The case was tried before the Commission as provided by law in such actions. The Commission made an award in the total sum of $1,400.00, allowing $400.00 as the value of the rights taken in the easement and $1,000.00 as incidental damage to the remaining land.

Exceptions have been taken by both parties to the award of the Commission. The plaintiff contends that the award is excessive and that the evidence would not support an award in excess of $370.00. The defendants contend that the award is inadequate and that a proper award under the evidence would be in the sum of either $75,000.00 or $35,-000.00, depending upon the exact extent of the use the defendants would have of the land within the easement.

The hearing of the exceptions by the statutory three-judge court was waived by the parties and the case was heard by the undersigned judge sitting in accordance with the stipulation of the parties. The case is now being heard de novo upon the record before the commissioners.

It appears undisputed in the record that the interest here sought to be condemned is an easement and right-of-way for the construction and maintenance of a high voltage electric transmission line, the easement extending in a straight line over a strip of land 150 feet wide and 1,323 feet long and comprising a total of 4.6 acres. The easement extends across a tract of land owned by the defendants, the tract consisting of a total of 58 acres. The total tract is approximately rectangular in shape and the easement extends across the approximate center of the tract, running from north to south. The easement calls for the construction of two steel towers, one located upon the northern boundary of the tract, being partly upon the adjoining tract, and the other being located wholly within the defendants' tract and at a point approximately 230 feet from the southern boundary of the tract. The power line crosses the land at elevations above the ground varying from a low of 35 feet to a high of 65 feet. The land is located in a rural portion of Mc-Minn County, Tennessee, at a distance of approximately nine miles northwest of Athens, Tennessee.

At the time the easement was taken, upon March 25, 1964, the defendant was using the tract in connection with the mining of barium sulphate, a white rock used in the manufacture of paint and for other purposes. A plant for the crushing and washing of barite ore was located on the tract, along with settlement basins for the deposit of waste material separated from the ore. The washing and separation plant is located wholly outside of the easement, but the easement does extend over a small portion of the settlement basins, the trans-

mission line being at an elevation of 48 feet in the area of the settlement basins.

No actual mining of barite ore is done on the tract upon which the easement is taken. Rather, this tract is used by the defendants for the washing and separating process referred to above and for the storage of ore and overburden and other waste materials. The actual mining operations are carried on by the defendants upon nearby tracts upon which the defendants have leasehold mineral rights. The mining of barite is conducted in open pits so that weather is a material factor in determining when ore can be mined. To provide ore for continuous operation of the crushing and washing plant during the winter months, when weather conditions will not permit mining, a stockpile of ore is accumulated near the washer site. It is contended by the defendants that to assure a continuous operation during winter months, it is necessary to stockpile a quantity of ore, covering approximately an acre and being approximately 30 feet in height.

The real factual controversy in this case arises over the extent to which the easement taken will interfere with the efficient storage and stockpiling of ore. A legal issue then arises between the parties as to the proper measure of damage. With respect to the factual issue, it is the contention of the defendants that the easement interferes very substantially with the efficient storage of ore, requiring the defendants to store the ore at a greater distance from the washer and separation plant, and thereby substantially increasing their operating costs. The relocation of the storage of ore is also alleged to cause a relocation of the storage of overburden and other waste materials, thereby increasing the defendants' costs in handling these materials, also. The variation in the defendants' proof with respect to damages, as being either $75,000.00 or $35,000.00, is occasioned by the uncertainty upon the part of the defendants as to whether they will be permitted to use the land within the easement to stockpile ore to the extent of maintaining a clearance of not

less than 30 feet under the transmission lines, in which event they contend that their damage will be $35,000.00, or whether they will be entirely prohibited by the terms of the easement from storing any ore within the easement, in which event they contend that their damage will be $75,000.00.

The plaintiff, on the other hand, denies that the easement interferes in any way with the efficient storage of ores or of overburden or waste materials. In this regard the plaintiff contends that the defendants will be permitted to use the land within the easement for any storage or other operations, so long as no structures are built within the easement and so long as a minimum clearance of 30 feet is maintained between the transmission lines and the storage materials and so long as a minimum of 25 feet is maintained on all sides of the towers.

With respect to the legal issue, it is the contention of the plaintiff that the true measure of damage is the market value of the easement rights taken upon the date of taking, considering the highest and best use of the land, and that the defendants' estimated increased costs of operation is not a proper method of arriving at the value of the easement taken. Upon the other hand, the defendants contend that the proper measure of damage is the value of the land taken to the landowner for the particular use to which he was putting the land, and that this value can be shown only by proof of the loss occasioned the landowner by reason of increased operating costs over the reasonable life of the landowner's anticipated operations upon the land.

In support of their contentions, the defendants produced four witnesses: Guy Crawford, James M. Godsey (the defendant), Paul Bowen, and Charles W. Price.

The witness Crawford, a civil engineer, identified a plat of the tract in the area of the easement, showing the location of the easement and towers with reference to the settlement basins, the washing plant, and the roads and storage areas.

The defendant Godsey testified, among other matters, that he purchased the tract involved in 1963, exchanging a house and eight-acre tract for the 58-acre tract. He estimated the value of the house and acreage given in exchange to be worth $16,000.00, testifying that he had purchased the property given in exchange in 1960 for $4,500.00, but had made improvements upon the house at a cost of $3,200.00. The land was particularly suited for a barite washer site and settlement basins, by reason of its location near the mining operations and by reason of its topography. He testified that he had spent approximately $68,000.00 for the installation of the washer plant and the purchase of equipment, including trucks and other equipment. He further testified as to the need for space to stockpile ore near the washer for continuous operation of the plant during winter months and when weather would not permit mining operations. He estimated that he had ore reserves sufficient to operate for 12 to 15 years, and that his additional costs by reason of the taking of the easement and the relocating of his storage operations would cost him $75,000.00 over the estimated life of his operation at this site. He placed no estimate on the value of the easement taken other than the estimated increase in costs to him over the life of his operations, stating that the land would not be worth $30.00 an acre to anyone for any other purpose than that for which he was using it. Upon the basis that he could use the land within the easement to store ore to a height within 30 feet of the transmission line and to a distance within 25 feet of the base of the towers, he stated that this would revise his estimate of the damage he would suffer, but that he would still be deprived of adequate storage area adjacent to the washer plant and would estimate the damage to him over the life of his operations on this basis to be $35,000.00.

Paul Bowen, the manager of the Barite Division for National Lead Corporation in the McMinn County area, testified to his personal knowledge of the defendant's barite operations upon the tract involved. It was his opinion that the taking of the easement would require the relocation of the ore stockpile at a distance 300 to 400 feet further from the washer plant, requiring hauling by truck rather than hauling by payloader, to the washer and over the estimated life of the operation it was his opinion that the defendant's costs would be increased a total of $66,700.00 by reason of the easement location. (The witness testified to increased costs in the sum of $64,700.00, but made an error of $2,000.00 in addition of his subtotals.) Otherwise, he had no opinion as to the value of the land or the easement.

Charles Price, who had experience in mining barium sulphate and was familiar with the defendants' operations, testified that in his opinion the defendant's estimate of increased costs due to the location of the easement was reasonable.

In support of its factual contentions, the plaintiff produced seven witnesses: Richard F. Connelly, Verlen C. Moneymaker, R. S. Stewart, Rankin Hudson, S. W. Boyer, Guy William Sheritz, and Emile Argo.

The witness Connelly, an engineer in charge of engineering design of the electrict transmission line here involved, testified as to the elevation of the line at various points, the elevation varying from a low of 35 feet to a high of 65 feet. He further testified that ground use leaving clearance of 30 feet was permissible, with equipment use within six feet of the line being considered safe clearance. He identified areas for storage of ore up to a height of 35 feet within the easement area.

The witness Moneymaker, chief of the geological branch of the T.V.A., testified to the tonnage and storage area within the easement for barite ore in the area between the tower and the road designated as desirable for use by the defendants, and testified that approximately 30,000 tons of ore could be stored

in this area without interfering with the easement rights.

The witness Stewart, a civil engineer and land appraiser with the T.V.A., testified to recent sales of comparable land in the area varying from $60.00 per acre to $92.00 per acre, with one tract, including improvements, selling for $135.00 per acre. He placed a market value upon the 4.6 acres within the easement at the date of taking, and considering its present use, as $100.00 per acre, or a total of $460.00, with a 40% value remaining after taking of the easement, leaving a net market value for the easement rights taken of $280.00. He identified pictures (Exhibits 5 thru 11) of the area and identified areas within less than 300 feet of the washer site which he considered more suitable for storage of ore than any within the easement. He testified that in his opinion the easement would not interfere with any existing use being made of the land by the defendants.

The witness Hudson, a real estate broker from Athens, Tennessee, testified that he was familiar with the real estate prices in the area of the Godsey property and had appraised the Godsey tract, having in mind its current use for mining operations and having in mind the need for land to stockpile ore in the vicinity of the washer plant. He appraised the 4.6 acres in the easement as worth $600.00 before the taking of the easement and as worth $230.00 after the taking of the easement, leaving a net market value for the easement taken in the sum of $370.00. He expressed the opinion that there was adequate land for storage purposes remaining, with storage under the transmission lines being limited only as to height, and within the vicinity of the towers. He testified that he placed a value of $130.00 an acre on the land within the easement, in view of the mining operation, but would have valued the land at $65.00 or $75.00 an acre but for the mining operation.

The witness Boyer, a real estate broker from Athens, Tennessee, testified as to his knowledge of recent sales of comparable land in the area varying from $60.00 per acre to $77.00 per acre. He placed a market value upon the 4.6 acres within the easement at the date of taking, and considering its present use, as $100.00 per acre with a value remaining after taking of the easement rights in the sum of $276.00 ($460.00 minus $184.00). He gave as his opinion that there was no incidental damage to the remaining tract by reason of the easement. He conceded that the easement would occasion the loss of some storage area for stockpiling ore, but stated that he had taken this into consideration in placing the value upon the easement rights taken. He stated that in his opinion there was adequate area for storage of ores that would be better and closer to the washer plant than the area within the easement.

The witness Sheritz, a real estate broker from Athens, Tennessee, testified that he had investigated recent sales in the area which varied in price from $60.00 to $77.00 per acre, including one tract with improvements selling for $92.00 per acre, the land, in his opinion, having a value of $60.00 per acre. He testified that the house and eight-acre tract which was used by the defendants in trade for the present 58-acre tract had a value of $7,800.00 at the time of the trade, in his opinion. He testified that the market value of the land within the easement on the date of the taking, considering its use and all other uses which would contribute to its market value, was, in his opinion, $105.00 an acre, or a total of $473.00, with a value of $184.00 remaining and the easement rights having a net value of $299.00, which he rounded off at $300.00.

The witness Argo, a real estate appraiser employed with the T.V.A., testified as to his knowledge of uses made of land under electric transmission lines corresponding to uses proposed to be made by the defendants and identified pictures (Exhibits 13 thru 16) where

materials were being stockpiled under electric transmission lines.

██ Upon the entire record in this cause, the Court is of the opinion that the defendants have not carried the burden of proof of establishing damages by reason of the taking of the easement here involved in the amount testified to by any witness for the defendants. The burden of proof upon the issue of just compensation is, of course, upon the landowner. United States ex rel. and for Use of T.V.A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95, cert. den. Welch v. United States ex rel. and for Use of T.V.A., 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030. The defendants have made no effort to establish a market value of the easement rights taken except as such values may be established by evidence of increased costs of the defendants' operations upon the tract with the easement imposed thereon. Aside from the legal issue as to whether such proof is competent to establish market value or just compensation, in the opinion of the Court the defendants have failed to establish by a preponderance of the evidence that the easement will deprive them of the storage areas needed for the efficient operation of their mining installation or will increase their operating costs as contended. Moreover, it appears that increased operating expense of a business is not a proper method for determining the just compensation due unto a landowner for property acquired in a condemnation proceeding. Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644 (1925); United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946); United States ex rel. and for Use of T.V.A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047 (1943); Joslin Mfg. Co. v. City of Providence, 262 U. S. 668, 43 S.Ct. 684, 67 L.Ed. 1167 (1923); United States v. Pennsylvania-Dixie Cement Corp., 178 F.2d 195 (6th Cir. 1949); Baetjer v. United States, 143 F.2d 391 (1st Cir.), cert. denied, 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618 (1944); Stephenson Brick Co. v. United States, 110 F.2d 360 (5th Cir., 1940); West Virginia Pulp & Paper Co. v. United States, 200 F.2d 100 (4th Cir., 1952); United States v. Certain Land in Baltimore County, Md., 209 F.Supp. 50, 55 (D.Md.1962); United States v. Avigation Easement, 140 F.Supp. 289, 293, 16 Alaska 228 (D.Alaska 1956); Ralph v. Hazen, 68 App.D.C. 55, 93 F.2d 68, 70–71 (1937).

██ It appears to the Court under all of the evidence in the record that the reasonable value of the easement rights taken in this proceedings would be in the sum of $400.00, as determined by the Commission. The evidence of incidental damage to the remaining tract of the defendants is not very satisfactory. All the witnesses for the Government testified that no incidental damage would be occasioned, although each witness who testified on the subject of storage areas conceded that some relocation of storage areas other than within the easement area might be necessary or proper. To the extent that a relocation of storage areas would affect the value of the remaining tract of land, the Court is of the opinion that evidence of incidental damage has been established and that the sum of $1,000.00 would be just compensation for such incidental damage. An award will accordingly be made in the total sum of $1,400.00 as just compensation in this case, and the exceptions of each party to the award of the Commission will accordingly be overruled.

An order will enter in accordance with this opinion.